## Shaw, et al v. Board of Drainage Commissioners of Daviess County, et al.

(Decided October 21, 1914.)

### Appeal from Daviess Circuit Court.

1.    Constitutional Law.—Drainage Act.—The Act Relating to the Drainage of Lands, approved March 4, 1912, Chapter 132, Acts, 1912, page 483, is not unconstitutional on the ground that it violates section 13 of the Bill of Rights or Section 243 of the Constitution, in not providing a certain and adequate remedy for determining the landowner's compensation, or in failing to make adequate provision for securing compensation before the landowner's property is taken or destroyed.

2.    Constitutional Law—Drainage Act—Assessment of Benefits and Damages—Trial.—Fairly construed, the Act of 1912, relating to the drainage of lands gives to the landowner a hearing in court on the preliminary assessment of benefits and damages, a trial by jury on these questions, and the right of appeal, and is not, therefore, unconstitutional on the ground that these rights are denied.

3.    Constitutional Law—Who May Raise Question.—In an action by private landowners to enjoin proceedings for the construction of a ditch on the ground that the drainage act is unconstitutional for the reason that it denies to municipalities and railroads the equal protection of the law, and if the act be adjudged unconstitutional on this ground, municipalities and railroads will be relieved of their burden and the burden of the private landowners will be increased, the interest of the private landowners is too remote and contingent to justify the court in passing on the constitutionality of the act in the respects indicated, in an action

where the municipalities and railroads against whom the act is alleged to discriminate, and whose rights are directly involved, are not before the court and are not complaining of the alleged discrimination.

MILLER, SANDIDGE & MALIN and C. M. FINN for appellants.

J. R. HAYS, C. W. WELLS, AMICUS CURIAE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This action was brought by Emison Shaw and others, taxpayers and landowners, against the Board of Drainage Commissioners of Daviess County, for the purpose of enjoining certain proceedings commenced in the Daviess County Court for the purpose of establishing a drainage ditch over and in the vicinity of their land. The trial court denied the relief asked, and they appeal.

It is admitted that the Board of Drainage Commissioners was proceeding in all respects in conformity with an act relating to the drainage of lands, approved March 14, 1912. Chapter 132, Acts 1912, page 483. The injunction is sought on the sole ground that the act itself is unconstitutional in several respects.

The act itself being very long and comprehensive, we deem it unnecessary to set it out in full. It will be sufficient to state in a general way the effect of certain provisions not attacked, and to set out at length those provisions which are assailed on the ground of their unconstitutionality.

Section 1 of the act confers on the county judge of each county jurisdiction, power and authority to locate, establish and have constructed levees, ditches, drains, etc.

Section 2 provides for the filing of the petition by one or more of the landowners whose lands will be liable to be affected or assessed for the construction of the ditch, before the county judge is authorized to establish, widen, straighten, deepen or construct such ditch. The petition must describe the lands to be ditched or drained in such way as to convey a general idea of their location; and must allege that the drainage of same will result in public benefit or utility, or that the public health, convenience or welfare will be promoted thereby. The petition must also set forth the names of the owners of the lands, so far as known to the petitioners, which are likely

to be affected by the improvements. It is further provided that bonds shall be given by the commissioners or some one of them. When the petition is filed, the county judge can appoint a competent civil and drainage engineer and two resident freeholders of the county, who together shall constitute the board of viewers.

Section 3 provides for a report by the board of viewers, covering the practicability and propriety of the proposed route, and showing whether it would benefit the public health, comfort or convenience, or any public highway, or be conducive to the general welfare of the community in which it is to be located; whether the proposed improvement would benefit the lands sought to be benefited, or any of them, and whether or not all the lands proposed to be benefited are included in the proposed drainage district. If the report shows that the improvement is not practicable, or it will not benefit the public health or any public highway, or be conducive to the general welfare of the community, the petition is to be dismissed. If the report shows that the improvement is practicable, and will benefit the public health, etc., the proceeding shall be continued for process and for further orders.

Section 4 provides that if the petition be not dismissed, the clerk shall issue process against the landowners named in the petition and in the viewers' report, whose land or lands are shown to be affected by the proposed improvement, notifying them of such proceeding and of the fact that their lands are affected, and directing them to show cause why the same should not be assessed. This section further provides that the action in the viewers' preliminary report shall stand for exceptions as to each and every party brought before the court, at the next regular term of the county court, after process shall have been executed for the length of time provided by the civil code for actions in the circuit court, and that no exceptions shall be filed by any party properly before the court after such term, unless the day for filing the same be extended by the court, which may be done for good cause shown, or unless the court shall be satisfied that due diligence has been exercised, and that in the interest of justice such exceptions should be thereafter filed, in which event it may by order permit the filing of such exceptions at a later date. If a jury trial is demanded, the trial should be by jury; otherwise, the exceptions shall be tried by the court.

Section 5 provides for an appeal from the judgment of the county court to the circuit court, to be prosecuted within ten days from the rendition of the judgment by the county court.   It further provides for an appeal from the circuit court to the Court of Appeals, to be prosecuted within ten days after the judgment of the circuit court is rendered.

Section 6 provides if no exceptions shall be filed to the preliminary report the same shall be confirmed.   It further provides for modification of the viewers' report under certain circumstances.   When the viewers' report is finally confirmed, or changed or modified, the county court shall then establish the drainage district.   After the district is established, the report of the viewers shall be referred by the court to the Board of Drainage Commissioners.

Section 7 provides for the appointment by the county judge of a board of drainage commissioners, who shall have charge of all public ditches, drains, etc., in such county, except as otherwise provided by the act.

Section 8 provides for the appointment by the Board of Drainage Commissioners of a chief engineer and assistants, with authority to make a complete topographical survey of the drainage district.   It further provides for a report showing an estimate of the cost of the work, and the plans and specifications therefor, all of which shall be filed with the county clerk.   Section 9 provides that when the report of the engineers is filed the Board of Drainage Commissioners shall meet and adopt same, with such modification as may be determined upon. Within ten days after it is modified, it is the duty of the county judge to enter an order referring the proceedings to the original viewers for the purpose of assessing damages, etc.   Section 10 prescribes the method to be employed by the viewers in classifying the land and assessing the benefits thereon.

Section 11 is as follows:

"When any public ditch, drain or water course, established under the provisions of this act crosses a public street or highway, the actual cost of construing the same across the street or highway, or removing old bridges or building new ones shall be paid for from the fund of the drainage district.   Whenever any street or highway within the levee or drainage district shall be beneficially affected by the construction of any improvement or improvements in such district, it shall be the

duty of the viewers to assess and give in their report the amount of benefit to such street or highway, and process shall be issued against the county, city or incorporated town, owning or controlling same. Such county, city or town shall have the right to appear before the court and file its exceptions the same as any land owner, and shall be liable for and shall pay the amount finally assessed against it, which may be recovered by suit in the name of the Board of Drainage Commissioners.''

Section 12 is as follows:

''The viewers shall also assess the benefits that will accrue to the right of way, roadbed and other property of any railroad company by affording better drainage or a better outlet for drainage, but no benefits shall be assessed because of the increase in business that may come to said road because of the construction of the improvement. The benefits shall be assessed at a fixed sum, determined solely by the physical benefit that its property will receive by the construction of said improvement, and it shall be reported by the viewers as a special assessment, due personally from the railroad company as a special assessment; it may be collected in the manner of an ordinary debt in any court having jurisdiction. The county clerk shall issue process against such railroad company so assessed, and it shall have the same right to file exceptions that is herein given to landowners, the proceeding, as well as the right of appeal to be the same as herein provided for, but any appeal, if taken, shall not delay or defeat the construction of the improvement.''

Section 13 provides for the construction of the ditch across the track of the railroad company, and for a meeting with a representative of the company and the superintendent of construction for the purpose of arranging the exact time that the work can be most conveniently done. The work must be so planned and conducted as to interfere in the least possible manner with the business of the railroad. In the event the railroad company refuses or fails to remove its track and allow the work to proceed, a penalty is provided.

Section 14 is as follows:

''It shall be the further duty of the board of viewers to assess the damages claimed by any one that is justly right and due to them for land or property taken, injured or destroyed, because of the construction of the improvement, or for any other legal damages sustained,

including the actual ditches utilized.  Such damage shall be considered separate and apart from any benefit the land would receive because of the proposed work, and shall be paid by the Board of Drainage Commissioners when funds shall come into their hands.  If any person or persons agree to waive such damages, such agreement shall be reduced to writing, and filed by the viewers with their report."

Section 31 provides for the preparation of the assessment roll, giving a description of all the lands in the drainage district, the name of the owner and the amount of assessment against each of the several tracts of land.  In preparing this assessment roll, the board is required to ascertain the total cost of improvement, including the damages awarded and to be paid to the owners of land, and private ditches, the costs of the proceeding and all wages paid or to be paid, including that of the board and its employes, and deduct therefrom any special assessment made against any railroad or highway, and the remainder shall be the amount to be borne and paid by the lands benefited.  This amount shall be assessed against the several tracts of land according to the benefit received, as shown by the classification and ratio of assessment made by the viewers and confirmed by the court.  Said assessment is made a first and paramount lien against the lands assessed, subject to the lien for state and county taxes.

Section 32 provides that if the total assessment against the lands shall be less than an average of 25 cents an acre, the assessment against the several tracts shall be collected in one installment.  If the assessment exceed 25 cents an acre, the Board of Drainage Commissioners may issue bonds bearing six per cent interest, and payable in ten equal installments.

(1)   It is first insisted that a certain and adequate remedy for determining the landowner's compensation is not provided by the act, and for this reason the act is violative of section 13 of the Bill of Rights of our Constitution, and also of section 242 of that instrument. Section 13 of the Bill of Rights provides:

"No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

Section 242 of the Constitution is as follows:

"Municipal and other corporations, and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. The General Assembly shall not deprive any person of any appeal from any preliminary assessment of damages against any such corporation or individual, made by commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law."

In support of the contention that the act affords no adequate remedy for determining the landowner's compensation, it is insisted that under section 14, the viewers are under no obligation to assess damages for land taken, injured or destroyed unless damages be claimed, since the act provides it shall be the further duty of the board of viewers to assess the damage claimed by any one that is just and rightly due to them for land or property taken, injured or destroyed because of the construction or improvement, or for any other legal damages sustained, including the actual estimated amount saved on account of private ditches utilized. In this connection it is contended that if one happened to be an infant, a person of unsound mind, a non-resident, or too ill to appear before the viewers and claim damages, the viewers are under no obligation or duty to make an assessment. The act in question, however, is not, we think, susceptible of such a narrow construction. The first part of section 14 is to be construed in the light of the concluding provision: "If any person or persons agree to waive such damages, such agreement shall be reduced to writing and filed by the viewers with their report." Fairly construed, the act, we think, provides for the payment of damages in all cases where damages have been suffered, except where the landowner agrees to waive his right to damages. In the case of persons without the legal capacity to claim or to waive such damages, it will be the duty of the viewers to assess the damages to their lands, and if any case actually arises where a person's property has been taken without just com-

pensation, the provisions of the Constitution will afford him adequate relief.

(2)   The contention is also made that the act is violative of the foregoing provisions of the Constitution because it not only fails to require that the compensation shall be previously made before the property is taken or destroyed, but fails to make any adequate provision for securing compensation at any time.   It merely requires that the damages shall be paid by the Board of Drainage Commissioners when funds shall come into their hands.   This is not a case where the person whose property is taken has nothing more than a mere right of action against a private person or corporation, and does not, therefore, fall within the rule laid down by the Massachusetts Supreme Judicial Court in Attorney General v. Old Colony R. Co., 22 L. R. A., 112.   Here an assessment of damages is provided for by the act, and a method thus provided for securing the funds with which to pay the damages.   In the case of Duke v. O'Brien, 100 Ky., 710, it was contended that the statute failed to make adequate provision for compensation to the landowner whose land was taken.   The act there called into question provided:

"In locating a public or private ditch, drain or water course, the viewers shall estimate the damages, if any, that any person or persons will sustain by reason of the construction of such ditch, and assess such damages to the parties owning the lands benefited, in proportion as each tract of land is assessed for benefits."

In answer to the contention that the act did not protect the landowner, the court said:

"The act does not say that the damages shall be paid before entry, but it provides the source from which the damages are to be collected, and the rights of the owner in this behalf are fully protected by well settled law."

In the case under consideration the act provides that the damage shall be paid by the board of drainage commissioners when funds shall come into their hands, and prescribes an adequate method for raising the funds. Furthermore, as held by the chancellor below, it is the duty of the Board of Drainage Commissioners to pay to each landowner, if he demand it, the damage to his land before his land is taken, and the act in question may be supplemented by the judgment of the county court requiring that this be done.   As thus construed and applied, no injustice can arise, and we see no rea-

son, therefore, for holding the act unconstitutional on the grounds relied on. If, as a matter of fact, any landowner's property is taken without just compensation having been previously made, adequate relief will be afforded by the courts.

It is next insisted that the act does not provide for a hearing in court on the preliminary assessment of benefits or damages, or for a trial by jury on these questions, or for the right of appeal. It is true that the act itself, in so far as it provides for the filing of exceptions and a hearing in court on those questions, was somewhat crudely drawn. The rule is that an act will not be declared unconstitutional unless plainly so, and that if it be susceptible of two interpretations, that interpretation will be adopted which renders the act constitutional. While a cursory reading of the act will result in the conclusion that it permitted exceptions only to the preliminary report of the viewers, and did not provide for exceptions in the case of the preliminary assessment of benefits or damages, yet other provisions of the act make it plain, we think, that a full and fair hearing by the court and by a jury, if demanded, is to be granted on all of those questions. Thus, section 15 provides in effect that when the report is filed a date not less than 20 days thereafter shall be fixed by the court for a final hearing on the report, and notice thereof shall be given not only by publication in a newspaper, if there be one, but by posting certain notices. The act not only provides for a hearing, but for a sufficient notice of the hearing, all the parties affected having theretofore been brought before the court. It was not intended that the hearing should be a mere idle form, but that the parties interested should have an opportunity to file exceptions to the report, and that there should be a hearing on those exceptions. Furthermore, section 31 provides for confirmation by the court of the classification of the land and the ratio of assessment of the different classes. Not only so, but section 35 contemplates that such assessment, when confirmed by the county court, may be modified by a court of superior jurisdiction. Not only is provision made for a proper hearing in the county court on the preliminary assessment of benefits or damages, but an appeal may be taken to the circuit court where the case is to be tried as other civil cases are tried, and the issues confined to those raised below. A further appeal is provided to the Court of Appeals. Since the

act provides that the parties affected shall be brought into court in the manner provided by the Civil Code in civil cases, and since they are thus afforded an opportunity to be heard, not only by exceptions to the preliminary report of the viewers, but by exceptions to the preliminary assessment of benefits and damages, we conclude that due process of law is not denied by the act; for it is well settled that when a burden or the fixing of a tax or assessment by the statute of a State is required to be submitted to a court of justice before it becomes effective, with notice to the owners, and with right on their part to appear and contest the assessment, this is due process of law within the meaning of the Federal Constitution. Davidson, &c. v. Board of Adm'rs. of New Orleans, 96 U. S., 97, 24 L. Ed., 616. In view of the foregoing facts, we also conclude that the act does not violate the provisions of section 242 of our Constitution, in that it deprives any person of the right of appeal from any preliminary assessment of damages, or the right of trial by jury on such appeal

Lastly, it is insisted that the act denies to municipalities and railroad companies the equal protection of the law. In this connection it is claimed that municipalities and railroad companies are assessed the full amount of the benefits, while ordinary landowners are assessed in proportion to the benefits; that municipalities and railroad companies must pay at once, while the ordinary landowner in certain instances is given ten years within which to pay his assessment; that the assessment against municipalities and railroads is made a personal debt, and may be sued for in any court having jurisdiction, while the assessment against the lands of other owners is a mere lien on the property. It is further claimed that the cost of removing old bridges and building new ones where the ditch crosses a street or public road, or the land of a private landowner, shall be paid from the funds of the drainage district, whereas the cost of putting in new railroad bridges or trestles, made necessary by the construction of the ditch, is to be borne by the railroad company, and the act in this respect discriminates in favor of the private landowner and municipalities, and against the railroad company. It is insisted that plaintiffs, who are private landowners, have the right to raise this question because it appears from the pleadings that certain railroads and municipalities will be affected, and if the act is declared uncon-

stitutional as to them, the burden imposed on plaintiffs will be correspondingly increased. It is the well established rule that the validity of an act can be called in question only by those having a direct interest in the rights supposed to be injuriously affected by its provisions, and no one can interpose to ask the interference of the court to declare the act void or to prevent its full operation, except so far as may be necessary to support or protect his property or rights from unauthorized injury or invasion. Hingham, &c., Turnpike Corporation v. County of Norfolk, &c., 6 Allen (Mass.), 353; Cumberland & Ohio R. Co. v. Barren Co. Court, 10 Bush, 604; Marshall v. Donovan, &c., 10 Bush, 681; Cooley's Constitutional Limitations, section 164. The reason for this rule is that an act unconstitutional as to a particular class is voidable only at the election of that class, and can not be taken advantage of by one whose interests may never be affected. Plaintiffs' position assumes that the municipalities and railroads affected by the proposed ditch will contest the payment of their assessments on the ground of the unconstitutionality of the act, and that if they do contest and succeed in their contention, plaintiffs' burden may be thereby increased. In our opinion, the interest of plaintiffs is too remote and contingent to justify our passing on the constitutionality of the act in the respects indicated in an action where the municipalities and railroads against whom the act is alleged to discriminate, and whose rights are directly involved, are not before the court, and are not complaining of the alleged discrimination, and who, as a matter of fact, may never complain.

Being of the opinion that the act is constitutional so far as it affects the rights of plaintiffs, it follows that the judgment should be affirmed, and it is so ordered.

Whole court sitting.