## Williams, et al. v. Wedding, Judge, et al.

(Decided June 11, 1915.)

### Appeal from Ohio Circuit Court.

1. Statutes—Construction—Section 51 Constitution.—If all the provisions of an act relate to the same subject, are naturally connected with, and are not foreign to the subject expressed in the title, it is sufficient, under the requirements of Section 51, of the Constitution.

2. Constitutional Law.—The Constitution prohibits the taking of private property for any other than a public use, or the collection of taxes for any other than a public purpose.

3. Drains—Eminent Domain.—The taking of lands for the construction of drains, where the construction will result in a public benefit, promote the public health, and is conducive to the general welfare of the community in which the drains are located, and the assessing of the lands benefited for the costs of construction and keeping the drains in repair, is a proper and lawful exercise of the power of eminent domain, and the inherent taxing power of the State.

4. Drains—Assessment of Land for Construction of.—The principle underlying the right to assess the lands benefited for the purpose

of construction of levees, ditches, and drains, and keeping same in repair, is that benefits are received from such construction and maintenance, and the costs must be paid by the ones receiving the benefits, equal to the costs.

5. Drains—Assessment of Land for Construction of.—The assessment of lands within a drainage district, for the costs of the construction of the levees, ditches, and drains, is a species of taxation, but such assessments are not taxes, within the meaning of Sections 157 and 158, of the Constitution.

6. Taxation—Street Improvements—Drains.—The taxes, the levying and collection of which are controlled and regulated by Sections 157 and 158, of the Constitution, are the regular levies of taxes for ordinary governmental purposes, upon all the property in counties, towns, and taxing districts, according to its value, and do not embrace special assessments for street improvements, and in drainage districts for the construction of ditches and drains.

7. Statutes—Chapter 132, Acts 1912—Construction.—Chapter 132, Session Acts 1912, is not violative of Section 242, of the Constitution, as it does not authorize the taking of private property for public use, without just compensation made before the taking, and does not deprive the land owner of an appeal from a preliminary assessment of damages made by the board of viewers, nor the right to have such assessment made by a jury.

8. Constitutional Law—Eminent Domain—Section 13, Constitution.— A law, which authorizes the taking of private property for public use, without first making compensation to the owner, is violative of Section 13, of the Constitution.

9. Drains—Chapter 132, Acts 1912.—Although under Session Act, 1912, Chapter 132, it is provided that the compensation for the lands taken to construct levees, ditches, and drains, and widening channels of creeks, must be paid by the drainage commissioners, when funds shall come into their hands, it does not authorize them to take the lands of any one, before the compensation is made, and where the funds are provided for to make such compensation, there is no reason to hold the act void, because it does not specifically provide, that the compensation must be paid before the land is taken.

10. Eminent Domain—Compensation—Sections 13 and 242 Constitution.—Under Sections 13 and 242, of the Constitution, where private property is taken for public use, the compensation must be paid before the property is taken, but where a corporation is authorized to take, injure, or destroy private property for public use, and the property is injured or destroyed for public use, it may be done after the compensation has been secured, and before its payment.

11. Statutes—Construction oi Chapter 132, Acts of 1912.—Session Acts, 1912, Chapter 132, is not void, because it does not provide that the assessments levied for the improvements shall not exceed the benefits, as a fair construction of the act is that assessments can not go beyond the benefits.

12. Statutes—Construction of Chapter 132 of Acts of 1912—Drains.—Under Session Acts, 1912, Chapter 132, the board of drainage commissioners are not performing judicial functions, when performing their duties, as their acts are administrative and not judicial, and the act is not void, as being in conflict with Section 109, of the Constitution.

13. Drains—Assessment by Commissioners.—When the board of drainage commissioners makes the assessments upon the lands, in accordance with the ratio of assessments approved by the county court, it is not exercising a judicial function, but it is an exercise of the taxing power.

14. Constitutional Law—Taxation.—The State has inherent power to levy taxes for public purposes, and this power the legislature, may, under proper restrictions, delegate to councils and trustees of towns, and cities, trustees of school districts, and the administrative officers of other taxing districts, designated in the authority granting the power.

15. Drains—Construction—Constitutional Law.—To keep drains, ditches, and levees in repair, is as much a public use, as the original construction, and there is no constitutional objection to delegating the power to make assessments for this purpose, and to supervise the ditches, drains, and levees, to the board of drainage commissioners, as the authority must be invested in an instrumentality of government somewhere.

16. Drains—Chapter 132 of Acts 1912—Construction.—Under Session Acts, 1912, Chapter 132, all the constitutional guarantees of the citizen are preserved to him, until after the confirmation of the final report of the viewers, and its reference to the board of drainage commissioners, but the act provides no remedy for the citizen after that time, and wherein Sections 32 and 49, of the Act, undertakes to deprive him of all remedy against the actions of the board of drainage commissioners, after that time, they are invalid, as depriving the citizen of the equal protection of the laws, and denying to him a remedy, in due course of law, for a wrong done to him, and vesting the drainage board with arbitrary power over his property, as provided against by Sections 14 and 2 of the State Constitution, and Article XIV., of the Federal Constitution.

17. Taxation—Assessment—Spoliation.—An assessment, which is greater in amount than the value of the property, upon which it is laid, is a spoliation, and an unconstitutional appropriation of property.

BARNES & SMITH for appellants.

ERNEST WOODWARD for appellee Ohio County Board of Drainage Commissioners.

HEAVRIN & KIRK for appellees Bennett and Scamahorn.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellants, W. H. Williams, et al., are land own-ers in Ohio County, Kentucky, and are the plaintiffs in a suit brought to restrain the Board of Drainage Commissioners of that county from letting a contract for the construction of a public ditch or drain, and from issuing bonds for the payment of the cost of construction and from entering on their lands to construct the work. The judge of the county court and the county of Ohio, and the contractors to construct the ditch or drain, and the petitioners to the court in the proceeding had to establish the drainage district and to construct the ditch, were made parties defendants to the suit. The plaintiffs below, who are the appellants here, sought to have declared void two judgments of the county court rendered in the proceedings, one of which was the judgment approving the final report of the viewers, and the other was the judgment fixing the estimated cost of the work at a different sum from the judgment confirming the viewers' final report.

The proceedings in the county court to establish the drainage district and to construct the ditch were had under the provisions of Chapter 132, Session Acts 1912. A general demurrer to the petition, as amended, of the appellants was sustained in the court below and the petition dismissed, to which judgment of the court they excepted.

The appellants sought the relief prayed for by them upon two grounds, one of which is, they insist that the legislative act in question is unconstitutional and void for many reasons urged by them, and for that reason the entire proceeding to establish the drainage district and to construct the ditch was void. The other ground upon which they rely is the allegation that the judgment of the county court approving the final report of the viewers and establishing the drainage district was made by the regular judge of the county court, who, as they allege, had no authority to do so.

It is insisted that the act of the legislature above mentioned is contrary to the provisions of Section 51 of the Constitution, which provides that no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title. The act in question contains 51 sections, and is a very elaborate and comprehensive act. It is very evident that the legislature, by the passage of the act, intended to estab-

lish a complete system of drainage for the swamp and wet lands in the State, and to provide the methods of procedure for that purpose, and the collection of the cost and expenses of it, and to provide by whom it might be done, and the payment to such persons performing the work a reasonable compensation, and providing officers to control and supervise the drainage districts in a county, and to keep them in repair. The title to the act describes it as an act relating to the drainage of lands, the establishment and construction of levees, ditches, and drains, and the straightening, widening and deepening, and otherwise improving public levees, ditches, drains, creeks, and non-navigable streams, prescribing the method of procedure, the assessment and collection of the cost and expenses thereof, creating and incorporating boards of drainage commissioners, and prescribing the duties, and providing for the payment of the officers and employes having duties to perform thereunder. The act is too long to undertake to set out all of its provisions in an opinion, but a reading of it demonstrates that all of the sections of it relate to one subject, and the subject of it is as set forth in the title, and no subject dealt with by the act is foreign to the title, and the title seems to be fairly expressive of the context of the act.

The rule, which has often been held by this court in relation to Section 51 of the Constitution, and in determining whether an act of the legislature complies with the requirements of that section of the Constitution, is that if all of the provisions of an act relate to the same subject, are naturally connected, and are not foreign to the subject expressed in the title, it is sufficient. Mark v. Bloom, 141 Ky., 474; Com'th. v. Starr, 160 Ky., 260; McGlone v. Womack, 129 Ky., 274, 111 S. W., 688; Nunn v. Bank, 107 Ky., 262; Conley v. Com'th., 98 Ky., 125; Diamond v. Com'th., 124 Ky., 418; Johnson v. City, 121 Ky., 594; 88 S. W., 672; Burnsides v. Lincoln County Court, 86 Ky., 423; Joyce v. Woods, 78 Ky., 386; Weimer v. Commissioners, &c., 124 Ky., 377; Ky. Live Stock, &c. v. Hager, 120 Ky., 125. The only subject which is expressed in the title is the subject of drainage of lands, to be accomplished by digging ditches, and widening and straightening streams, so as to perform the duties of drainage efficiently, and the erection of levees for the purpose of preventing the overflow of lands, and

thereby draining the swampy and wet lands, and the methods and means for carrying out these purposes, and all of the sections of the act are naturally connected with the subject expressed in the title.

The appellants insist that the act of the legislature, under which the proceeding was had, is void, because violative, in addition to Section 51 of the Constitution, also, of Sections 2, 7, 13, 14, 26, 109, 135, 157, 242, and 158 of the Constitution of the State, and of the Fourteenth Amendment to the Federal Constitution. The sections of the State Constitution, which they claim the act is violative of, are as follows:

"Section 2. Absolute and arbitrary power over the lives, liberty, and property of freemen exists nowhere in a republic, not even in the largest majority.

"Section 7. The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution.

"Section 13. No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of representatives, and without just compensation being previously made to him.

"Section 14. All courts shall be open and every person, for an injury done in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

"Section 26. To guard against transgression of the high powers which we have delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate; and all laws contrary thereto, or contrary to this Constitution, shall be void.

"Section 109. The judicial power of the Commonwealth, both as to matters of law and equity, shall be vested in the Senate when sitting as a court of impeachment, and one Supreme Court (to be styled the Court of Appeals) and the courts established by this Constitution.

"Section 242. Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed by them; which

compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual, made by commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law.

"Section 157. The tax rate of cities, towns, counties, taxing districts, and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz: * * * and for counties and taxing districts, fifty cents on the one hundred dollars; * * * No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same.

"Section 158. The respective cities, towns, counties, taxing districts, and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: * * * and counties, taxing districts, and other municipalities, two per centum. * * *"

To determine whether appellants are right in their contentions, it is necessary to take into consideration the various provisions of the legislative act in question, so far as it applies to and touches the proceedings in the instant case.

The act provides that the county judge shall have jurisdiction, power and authority to locate, establish, and have constructed all levees, ditches, drains, and canals, and to have straightened, widened, and deepened any

ditch, drain, or creek or non-navigable water course, and that he may exercise this jurisdiction, power, and authority when a petition signed by one or more land.owners, whose lands will be affected by such improvement, or assessed for the construction of it shall be filed with the clerk of the county court. The petition shall set forth the body or district of land proposed to be ditched, drained, or leveed, and that the drainage or leveeing of same would result in public benefit or utility, or that the public health, convenience, or welfare will be promoted by the draining, ditching, or leveeing of same, or by improving or changing the canal, creek, or water course. The petition must set forth the names of the owners of the land, so far as are known, whose lands are affected by. the improvement. When this petition is filed with the county clerk, the county judge will appoint a board of viewers to examine the lands and make a preliminary report. The board of viewers will examine the lands described in the petition, or any other which may be affected, and the route described in the petition or any other, which, in their opinion, may be more feasible or practicable. The board of viewers is authorized to make or have made, such surveys as may be necessary. The written report made by them will be to the effect, as to whether or not the proposed improvement is practicable, and the route a proper one.

Second: Whether it will benefit the public health, comfort or convenience, or any public highway, or be conducive to the general welfare of the community in which it is to be located.

Third: Whether the proposed improvement will benefit the lands sought to be benefited, or any of them.

Fourth: Whether or not all of the lands that are benefited are included in the proposed drainage district. They will file a map of the proposed district with the report, showing the location of the proposed improvement, and the lands that may be affected by it, and the names of the owners of the lands. At the next regular term of the county court, if the report is to the effect that the improvement is practicable, and will benefit the public health, or a highway, or be conducive to the public welfare, the county court will order process against the land owners, to show cause why their lands should not be assessed for the construction of the improvement, and will cause all of those, whose lands are

affected by the proposed improvement, to be brought before the court by such process, as is authorized by the Civil Code of Practice in actions in the circuit court. The parties may then file exceptions to the viewers' preliminary report, and the court will set the proceeding for trial on the exceptions upon some day, not earlier than ten days from the entry of the order, unless an earlier day is agreed to by the parties. The court will try the exceptions, unless a jury trial is demanded, when the trial shall be had by a jury. All the parties who are before the court will be bound by the judgment of the court, as to any question raised, or which might or could have been raised, up to that time, and the court will render judgment upon such issues as are actually raised by the exceptions. Any of the parties who feel themselves aggrieved by the judgment of the county court may take an appeal therefrom to the circuit court, which shall confine its judgment to the issues raised in the lower court, and an appeal may be had from the circuit court to the Court of Appeals. After the judgment of the county court becomes final, it will render a judgment to carry into effect the judgment of the court, as rendered, and will then render a judgment establishing the drainage or leveeing district, and will then, by order, refer the report of the viewers as corrected by the proceedings had in the courts up to that time, to the board of drainage commissioners, for the purpose of having made a complete survey, plans, and specifications for the improvement.

Section 7 of the act provides for the constitution of a board of drainage commissioners, and creating them a body corporate, and possessing such powers and rights as usually pertain to corporations, as may be necessary for carrying on the work under the provisions of the act, and providing that it may elect a secretary, or in the event it does not, authorizing the county court clerk to act as secretary of the board of drainage commissioners, and providing that the board shall keep a record of its proceedings and constituting the county court clerk the custodian of it.

The board of drainage commissioners shall employ or appoint a competent engineer, and prescribe the number of assistants to be employed on the work, and the chief engineer shall have authority to employ such assistants as may be necessary, and they shall make a

complete topographical survey of the drainage district,. and of the drain or drains, and of its laterals. The course and distance of the ditch, and width, and right of way shall be carefully noted and plotted and mapped, and shall make a drainage map of the district, and of lands owned by each individual land owner within the district. When the report of the engineer is filed, the board of drainage commissioners will adopt the same, with such modification as it may determine upon, when the county judge will enter an order referring the proceeding to the original board of viewers, who will be directed to assess the damages resulting to any individual by the construction of the improvement, and to make a classification of the lands for the assessment of same to pay the cost of the improvements. The board of viewers will classify the lands in the district, with reference to the benefits, they will receive from the construction of the improvement, and will separate the lands into as many classes' as may be necessary, according to the benefits received by them by the construction of the work, and will provide a ratio of assessment of the lands proportionate to the benefits they will receive from the construction of the improvement. The viewers will keep an accurate account of the expenses of this work, and will report in regard to all of the matters above stated, to the court, with a statement of the estimated cost of the work and improvements proposed to be made, and a description of the lands in the district, and the name of the owners, and the number of acres belonging to each owner and the class to which it belongs, and the ratio of assessment. The board of viewers will assess the damages to each owner for the land, or property taken, injured, or destroyed for the construction of the improvement, and for any other legal damages sustained, which shall be separate and apart from any benefit the land would receive because of the proposed work, and these damages shall be paid by the board of drainage commissioners when funds shall come into their hands. When the final report of the board of viewers is filed, the court will then fix a day, not less than twenty days thereafter, for a final hearing upon the report, of which due notice shall be given by publication in a newspaper of general circulation in the county, and by a written or printed notice on the door of the courthouse in the county in which the lands are assessed, and at five con-

spicuous places throughout the district. The parties interested may then file exceptions to this report, and will be entitled to a hearing, and the right of appeal from the judgment of the county court to the circuit court, as may be gathered from Sections 15, 31, and 35, of the act. The issues on the appeal, however, must be confined to the issues made in the county court, and the parties to the proceeding will be concluded by the judgment of the county court as to all questions which could or might have been raised upon the hearing of the final report of the board of viewers. When this report is finally confirmed by the county court, the proceeding is again referred to the board of drainage commissioners, who are authorized to advertise and let the work of the construction of the improvement to contractors for that purpose, and are directed to accept no bid for the work that exceeds the estimated cost, unless for good and satisfactory reasons, it is shown that the original estimate was erroneous. The board of drainage commissioners will prepare an assessment roll, giving the name of each owner of land in the district, and the amount of assessment against each of the several tracts of land, and will make the assessment according to the ratio of assessment reported by the board of viewers and confirmed by the court. In preparing this assessment roll, the board will ascertain the total cost of the improvement, the damages awarded to the owners of the land and private ditches, the costs of the proceeding, and all wages paid and to be paid, including that of the board and its employes, and will deduct from it any special assessment made against a railroad or highway, and the remainder will be the amount to be borne, and paid by the lands benefited. If the total assessment against the land is less than twenty-five cents an acre, the assessment will be paid in one installment, and after notice of the assessment having been made for thirty days, the board of drainage commissioners will deliver to the sheriff, or other collecting officer, the tax roll, with an order to collect the unpaid assessments, and he will collect same as tax against the lands assessed, and in the same manner that State and county taxes are collected. If the assessment exceeds the average of twenty-five cents an acre on all of the lands assessed in the district, after notice by a publication in a newspaper, and on the court-house door, and at five places in the drainage district,

.that bonds are proposed to be issued for the construction of the improvement, any land owner assessed may pay the total amount of his assessment, and if he fails to do so within the time specified, he shall be deemed as consenting to the issuing of drainage bonds, and in consideration of the right to pay his assessment in installments, he waives his right of any defense against the collection of the assessment because of any irregularity, illegality, or defect in the proceedings prior to this time. When the bonds are issued, they shall be paid in ten equal annual installments, and the commissioners may sell the bonds at no less than par, and devote the proceeds to the payment of the work as it progresses. Thereafter when assessments are not paid, the sheriff may proceed to collect them, when authorized to do so by the board, as state and county taxes are collected.

By Section 49 of the act, it is provided that the collection of the assessments shall not be defeated, where the parties are properly before the court, on account of any irregularity in the proceedings, which does not affect the substantial rights of the party complaining. * * * "The remedies herein provided for are exclusive of all other remedies. If on appeal or otherwise, or for any cause, any property shall be released, or any assessment raised or lowered, it shall not in any manner affect the rights and liabilities of any other property or persons, and the failure to appeal within the time herein prescribed, shall be a waiver of any right to attack the proceedings."

We have quoted the provisions of the act so far as they relate to the rights and obligations of the parties to this suit,. and such as apply to this particular case.

It may be said, that our Constitution prohibits the taking of private property for any other than a public use, and likewise prohibits the collection of taxes for any other than a public purpose. Robinson v. Swope, &c., 12 Bush, 21. It has been held in this State, that the taking of lands for the construction of drains, where the construction of such drains will result in public benefit, and will promote the public health, and is conducive to the general welfare of the community in which the drains are located and assessing the lands for the costs is a proper and lawful exercise of the power of eminent domain, and the inherent taxing power of the State. Duke v. O'Brien, &c., 100 Ky., 717.; Scuffleton Fence Co.

v. McAllister, 12 Bush, 315. In other jurisdictions, legislative acts for the purpose of reclaiming and rendering fit for cultivation wet and swampy lands, when combined with the public interest, in the way of promoting the public health and general welfare, have been upheld, where there were in existence constitutional provisions similar to our own. Billings Sugar Co. v. Fish, et al., 40 Montana, 256; Summers v. Sullivan, 39 Montana, 42; In Re Futhill, 160 N. Y., 133; Heager v. Reclamation District, 111 U. S., 701; O'Reilly v. Kankaker Valley Draining Co., 32 Ind., 169; In Re Madera Irrigation District, 28 Pacific, 272, and many others.

While the assessment of the lands within a drainage district, for the construction and maintenance of the ditches and drains, is a species of taxation, which is laid upon and collected from the lands benefited and affected by the establishment of the ditches and drains, the collection of such taxes is not regulated nor controlled by Sections 157 and 158, of the Constitution, *supra.* There must be a special authority from the legislative department, authorizing the imposition of such taxes, and the principle underlying the right to impose such taxes is, that benefits are received from the construction and maintenance of the drains, and the costs must be paid by the persons who receive the benefits, equal to the costs. The taxes referred to in Sections 157 and 158, *supra,* are the regular levies of taxes for ordinary governmental purposes upon all the property in the county, town or taxing district, according to its value, and those sections do not embrace the taxes levied as special assessments in towns and cities for street improvements, and in drainage districts for the construction of ditches and drains. Such assessments are not taxes within the meaning of the constitutional provisions, *supra.* Delker v. City of Owensboro, 61 S. W., 362; Lexington v. McQuillan's heirs, 9 Dana, 512; Goswell v. Louisville, 104 Ky., 201; Holzhauer v. City of Newport, 94 Ky., 407; Maddox v. City of Newport, 14 S. W., 957; Levi v. City of Louisville, 97 Ky., 409; McNaughton v. Louisville Industrial School, 19 Ky. L. R., 1695, 44 S. W., 38; Zable v. Orphans' Home, 92 Ky., 89. That local assessments made upon property for a local improvement, imposed by reason of local benefits, are not within the provisions of Sections 157 and 158, of the Constitution, may now be considered as settled law in this

State. Neither is the imposition of such taxes within the prohibition of the fourteenth article of the Federal Constitution, relating to the equal protection of the laws, which is guaranteed by that section.

The appellants insist that the legislative act under consideration is contrary to the provisions of the Constitution, as provided in Section 242, in that it authorizes the taking of private property for public use, without making just compensation before the taking, and deprives the individual of the right of appeal from a preliminary assessment of damages made by the board of viewers against the drainage commissioners, for the taking of the lands for the construction of the ditch, and deprives him of the right to have such damages assessed by a jury. This very question was determined by this court, in Shaw v. Board of Drainage Commissioners, 160 Ky., 422. It was there held that the act, in question, gave ample means and opportunity for any one interested to have all of his rights duly cared for. The provisions of the law provide for two hearings by the owners of the land. He may be heard upon the question, as to whether or not the proposed improvement is beneficial to his lands; and whether or not his lands shall be assessed for the costs of the improvement; and whether the proposed improvement will benefit the public, or be conducive to the general welfare of the community in which it is located; and whether or not the improvement is practicable, or the route a proper one; and whether or not all the lands benefited are included in the proposed district at the time of the hearing upon the first report of the viewers. Upon all these questions he may have a trial, by jury, and has the right of appeal from the county court to the circuit court, and thence to this court. When the final report of the board of viewers is filed, he then has a right to be heard upon all the things which may be included in the report, and upon all which should be included therein. He has the right to except to the damages assessed by the board of viewers for himself, or to those assessed for any other individual, if he is of the opinion that too great a sum is allowed such other individual, and he may except to the ratio of assessment provided for his lands, and to those provided for other lands, and to the estimated cost of the improvement, and to the sums reported as expenses by the viewers and their assistants, and upon these subjects,

he may have a trial by jury, and an appeal to the circuit court, and thence to this court, in accordance with the laws governing proceedings in civil actions. Shaw v. Drainage Commissioners, *supra.* Up to this time, in the proceedings under the statute, there can be no question, that the citizen has upon every question affecting him, his day in court, and the benefit of all the constitutional guarantees. This seems to dispose of the complaint of appellants, that the act is violative of Section 7, of the Constitution, *supra.*

The act is not violative of Sections 13 and 242, of the Constitution, in that it authorizes the taking of private property for public use, without compensation being previously made, because it does not provide that the property can be taken before the compensation is made. This court has often times held, that a law which authorizes the taking of private property for public use, without first making compensation to the owner, is in violation of Section 13, of the Constitution, *supra.* Asher v. L. & N. R. R. Co., 89 Ky., 391, 8 S. W., 854; Carrico, &c. v. Calvin, 92 Ky., 342; Chicago R. R. Co. v. Sullivan, 24 R., 860; Hamilton v. Maysville & B. S. R. R., 27 R., 252, 84 S. W., 760; Covington Short Route Co. v. Piel, 87 Ky., 267.

It has, also, held, that in a proceeding of the kind under consideration, where the damages to the individual are fixed by the court and ordered to be paid, and the means to secure the necessary funds provided for, and where the individual is not relegated to a mere right of action upon his part against an individual or corporation to secure his compensation, and it is the duty of the board of drainage commissioners to pay the compensation before taking the land, if the party demands it, there is no reason for holding the act unconstitutional because it does not require, by its terms, the compensation to be paid before the land is taken. Under Sections 13 and 242, *supra,* and which ought to be construed together, where private property is taken for a public use, the compensation to the owner must be paid or tendered to him before the property is taken, but where it is injured or destroyed by a corporation for the public use, it may be done after the damages have been secured to the individual. Chicago R. R. v. Sullivan, 24 R., 860.

The fact, that the act does not in terms provide that the assessment levied for the construction of the ditch

or drain, shall not exceed the benefits, which accrue
from the construction of the work, will not make it void.

In the case of Duke v. O'Brien, *supra,* this court, in
disposing of a similar objection, made to a similar stat-
ute, said:

"We think a fair construction of the act is that as-
sessments in no event can go beyond the benefits, and
this meets the objection complained of."

The appellant insists that judicial powers are be-
stowed upon the board of drainage commissioners, and
for that reason the act is in violation of Section 109 of
the Constitution. It is true that judicial powers are re-
stricted by the Constitution to the courts provided for
therein. The engineer and board of drainage commis-
sioners are not performing judicial functions, when they
are measuring the right of way for the ditches, and the
lands affected by the opening of such ditches, and
reporting what, in their opinion, ought to be the depth
and width of the ditch, as all of these things must be
submitted to the county court for approval and
confirmation. Section 16 of the act is not involved in
the instant case. It is true, the board of drainage com-
missioners makes the assessment of the taxes to be
paid, in accordance with the ratio of assessments, which
has been approved by the court, but in this it is not
exercising a judicial function, but it is an exercise of the
taxing power. The State has the inherent power to
levy taxes for public purposes, and this power the leg-
islature may, under proper restrictions, delegate to sub-
ordinate bodies, as to councils and trustees of towns and
cities, and trustees of school districts, and the officers
of other taxing districts designated in the authority
granting the power. The duties performed by the drain-
age commissioners, in the way of levying assessments,
is more of a clerical function than a judicial one. It as-
certains the entire cost of the project, and adds to it all
the expenses of the proceeding and its own expenses and
that of its employes, and the salaries due them and them-
selves, and then assesses the taxes upon the lands in the
ratio approved by the court, as being in accordance with
the benefits which will accrue to the land owners in the
district, respectively. It may employ a superintendent
and other assistants, when in its discretion, it appears
necessary, and keep the drainage facilities in repair,
and may levy other assessments yearly for these pur-

poses, and make orders and pay out the funds in its hands. This is justifiable, because to keep the drains in repair, is as much a public service, as the original construction of the drains. There is no constitutional reason why these powers should not be delegated by the law making power to the board of drainage commissioners, as the authority must be invested in an instrumentality of government somewhere.

The contention that the act is violative of Sections 2 and 14, of the Constitution of the State, and Article 14, of the Federal Constitution, in that the levying and collecting of the assessments levied upon the lands of the citizens, of a drainage district, for the construction and keeping in repair of the ditches, drains, and levees therein, is the exercise of an absolute and arbitrary power over the property in the district, and that the terms of the act is a denial to the citizen of a remedy by due course of law for an injury done to him in his lands and goods, is a more serious question. As heretofore stated, the statute provides ample remedies for any aggrieved citizen for any wrongs done him or attempted wrongs, up until the confirmation of the board of viewers' final report, and the transfer of the proceeding to the board of drainage commissioners for further proceedings. To this time, the citizen should be required, and the act so provides, that the remedies provided by the act are exclusive of any other remedies. Up to this time no assessment has been made. The right to make an assessment has, however, been determined upon. The citizen has learned what the viewers estimate will be of the cost of the improvement, and the ratio of his assessment, and if he knew, or had any way of knowing, what the other costs and expenses with which he will be charged a proportional part, he could by a mathematical calculation determine the amount of the assessment to be imposed upon him, and exercise his right of excepting to anything, in violation of his rights, which was proposed to be done. The estimate of the costs of the improvement made by the viewers is, manifestly, not intended to be the exact costs of the improvement, but is required to be made, more in the nature of information to be furnished the court to assist it in arriving at a conclusion, as to whether or not the work ought to be undertaken. The act provides that the board of drainage commissioners must not accept a bid to perform

the work which is in excess of the estimated costs, unless the estimate is found to be erroneous. This seems to give the drainage board the power to accept a bid that is, in amount, greater than the estimated costs, if the estimate is found to be erroneous. The board of drainage commissioners is authorized to ascertain the exact cost of improvement, and add to it all the costs in the proceeding, which has accrued, and which will accrue, and then make the assessment sufficiently large to pay it all. After the assessment is made, the land owner is not provided by the act, with an opportunity to have a hearing, either before the board of drainage commissioners, or any other tribunal. If the assessment should exceed the benefits, and thus become spoliation, or if the commissioners should make errors in the calculation and charge a land owner with a greater sum to be paid by him than was due, or if they should allow expenses, attorneys' fees, and salaries largely in excess of what was just or proper, or should add any other improper charge to the expenses, the land owner is denied any remedy. There is no provision of the act which will allow a hearing in court upon any question, which may arise after the final report of the viewers is transferred to the board of drainage commissioners. Section 49, of the act, in fact, provides that: "Any party or their privies properly before the court under the Civil Code of Practice shall be deemed to be before the court for all purposes, and shall be bound by all orders, judgments, and proceedings in the case not excepted to, or appealed from, in the manner herein provided for." The above works no hardship, if it only applies to such transactions as transpired in the proceeding while it was in the county court, and before it was transferred to the board of drainage commissioners, after the confirmation of the viewers' report. This then follows: "The remedies herein provided for are exclusive of all other remedies." No remedy is provided for any wrong, which may occur in the proceeding, after it is transferred to the board of drainage commissioners.

Section 32, of the act, provides that if the total assessment against the land shall be less than an average of twenty-five cents per acre, the entire assessment shall be paid at once. If the total assessment exceeds the average of twenty-five cents per acre on all the lands assessed in the district, after notice given by publication

and posters for thirty days, any one who was assessed and failing to pay the assessment, shall be deemed as consenting to the issuing of drainage bonds, and in consideration of the right to pay his assessment in installments, he thereby shall waive his right to any defense against the collection of the assessment because of any irregularity, illegality, or defect in the proceedings prior to that time, except in the case of an appeal, as heretofore provided which shall not be affected by the waiver. There is no hearing or appeal from anything occurring since the transfer of the final report of viewers to the board of drainage commissioners. The remedy by appeal is ample up to that time, but for anything occurring after that time, the above provision says, that no matter how erroneous or wrongful may be the acts of the board of drainage commissioners, or how erroneous the assessment, you must pay it, and if you do not pay it in thirty days, bonds will be issued and then you shall never object. This appears to be an attempt to deprive the citizen of all remedy for any wrong that may be done to him, and has that effect, if that portion of the act is valid. The legislature has authority to fix the time for the payment of taxes, and the provision, that if the assessment is more than twenty-five cents per acre, and not paid within thirty days, after notice, that bonds will be issued, is within the legislative authority. In so far as Section 32 undertakes to deny to the land owner all remedy for any substantial wrong that is attempted to be perpetrated upon him, by the collection of any improper assessment made against his lands, because he refuses to pay the wrongful assessment within thirty days, and assumes that, for that reason, he has agreed to pay it in ten annual installments, and in so far as Section 49 undertakes to deny any remedy to a land owner, except the remedies provided by the act, for an illegal assessment made against him, and denies him a remedy against any wrong done him or attempted to be done him, after the transfer of the proceeding to the board of drainage commissioners, is invalid. The sections, so far as indicated, are violative of Sections 2 and 14, of the Constitution of Kentucky, and Article 14, of the Federal Constitution, as denying to the land owners the equal protection of the laws, and denies a remedy in due course of law for a wrong done them. These sections of the act, so far as indicated, as being con-

trary to the provisions of the organic law, being elimi-
nated, leaves the land owner in a drainage district, with
the right to apply to the courts by a proper proceeding
to have redress for such actions of the drainage commis-
sioners, as may violate the rights of the land owner or
as amount to an abuse of discretion on the part of the
commissioners, and does not interfere with the useful-
ness of the act, but leaves it a workable statute for the
purposes for which it was designed.

The complaint that the judgment of the county court,
confirming the final report of the viewers, and referring
the proceeding to the board of drainage commissioners,
was made and signed by the regular judge of the county
court, when some months before, he did not preside in
the case on one or more occasions, and a special judge
was selected, who heard some portion of the proceedings,
is not meritorious.  The order does not show why the
county judge did not preside at one term of the court,
and we can only assume that he was  sick  or  absent.
After that term he seems to have held his court regu-
larly, and no objection was made to him by the appel-
lants, who were parties to the proceedings.

The judgment entered by him in September, chang-
ing the estimated cost of the construction of the work
from ten cents per cubic yard to thirteen cents, was void,
because the case had already ended in his court, and the
parties had no notice of the judgment, and could not
have appealed from it, because of want of knowledge that
it had been done.  The judgment, however, was harm-
less, as the board of drainage commissioners, who had
authority to let the work to contract at the sum of thir-
teen cents, instead of ten cents per cubic yard, and the
judgment did not affect the proceedings in one way or
the other.

The copies of the proceedings filed with the petition,
and the petition, shows that each of the appellants was
a party to the proceedings in the county court, and they
cannot now be heard to complain  of  anything  which
transpired up to the time of the judgment in the county
court confirming the final report of the viewers and its
reference to the board of drainage commissioners, in
which the ratio of the assessments was approved, and
the damages for the land taken allowed, and the court
was not in error in sustaining the demurrer to all that
portion of the petition, which complained of such pro-

ceedings. Neither do the amended petitions state a valid cause of action.

The petition, however, alleges that the appellees are attempting to take the portion of appellants' lands, condemned for the construction of the ditch proposed to be made, without ever having paid or tendered to appellants the sums which they were adjudged as compensation for the lands so condemned. The proceedings show that they never waived the payment to them of such damages beforehand, nor has the payment of same ever been secured to them. Under the decisions of this court heretofore cited, the above was a valid cause of action. The petition, also, in substance, alleged that the amounts of the assessments exceeded the value of appellants' lands, and what the value would be with the proposed improvements completed, and that it was proposed to collect these assessments against them. The allegation that the construction of the ditch will not benefit the lands at all, is a question determined by the judgment approving the first viewers' report and cannot again be litigated. An assessment which is greater in amount than the value of the property, is a spoliation, and an unconstitutional appropriation of property. Cooley on Taxation, pages 1256-1269; Duke v. O'Brien, 100 Ky., 710; Louisville v. Roller Mill Co., 3 Bush, 416; Hood v. Trustees, 15 S. W., 516; James v. Louisville, 40 S. W., 912.

The allegation of the petition made a good cause of action, as the assessment was made by the board of drainage commissioners, and appellants had no hearing upon it, nor any opportunity for a hearing.

For the purposes of the demurrer to the petition, the above allegations in regard to the excessiveness of the assessments over the benefits and the failure to pay the damages for the taking of the lands, under the right of eminent domain, must be admitted to be true, and the court was in error in sustaining the demurrer, as regards the two causes of action stated. If the assessments were found to be so excessive as to exceed the value of the land, with their improvements, which would have been in excess of the benefits, the court should have reduced the assessments to the benefits received, but not to an amount less than the proportional part due from the lands of the cost of the construction of the ditch, according to the ratio of assessment, calculating the costs at

ten cents per cubic yard, as appellants were parties to the proceeding in the county court, and did not except to the viewers' report, which reported the estimated costs of the improvement at that sum and with the means of knowledge how much the assessment would be, calculated at that rate, appellants allowed the report to be confirmed without excepting thereto.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.