### Stratton, et al. v. Syck.

(Decided November 15, 1918.)

Appeal from Pike Circuit Court.

1    Trespass to Try Title—Title to Support Action.—In a suit in trespass to try title to land, the defendant must succeed unless the plaintiff shows superior title in himself.

2. Boundaries—Location of Corners—Evidence.—Where the proper location of a given patent or survey is in question, and the litigants agree upon its shape and size, but dispute as to the proper location of the beginning corner, the only question necessary to submit to the jury is the proper location of said corner.

3. Adverse Possession—Evidence.—Where the defendant claims the land by adverse possession and this claim is traversed by plaintiff and the evidence is conflicting, the question is for the jury.

4. Public Lands—Copy of Land Warrant—Evidence.—A certified copy of a land warrant, entered upon the land warrant book in the county court clerk's office, is presumptive evidence of the existence of such warrant, and in the absence of proof to the contrary the presumption in favor of the warrant will prevail; and the mere failure of the county court clerk in a limited time to find the orders of the county court for a given term in 1843, is not sufficient proof to overcome the presumption.

5. Appeal and Error—Statement.—A statement of appeal must contain, among other things, the date on which the judgment is rendered and the page of the record upon which it may be found, and if it fails to contain these things, the appeal should not be docketed by the clerk, and if docketed will be stricken on motion made before submission of the case.

STRATTON & STEPHENS and AUXIER, HARMAN & FRANCIS for appellants.

J. S. CLINE, CLINE & STEELE and BUTLER & MOORE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

This is an action in trespass to try title to a boundary of land lying on the headwaters of Peter Fork of Chloe creek, in Pike county, Kentucky. Old man Jacob Syck, now dead, owned and claimed a large boundary of land, including and covering all the lands now in controversy. The mother of plaintiff John T. Stratton was a daughter of Jacob Syck, and the land upon which she lived and which the plaintiffs now claim is a part of the lands formerly claimed by Jacob Syck. The plaintiffs, Strattons, &c., live on the head of Burning Fork, while the lands claimed by George W. Syck and upon which he resided, lie upon the head of Peter Fork of Chloe creek, and there is a mountain between Peter Fork and Burning Fork, the top of which is claimed by Syck to be the dividing line between the lands of the plaintiff and defendant, but the Strattons claim that they are the own-

ers of the McGuire-Sparks patent which begins on the top of the aforesaid mountain and runs to a buckeye on the bank of the Burning Fork, thence a long line crossing the mountain and taking in a part of the head of Peter Fork, and the timber which it is charged in the petition was cut by defendant Syck stood upon the McGuire-Sparks patent on the head of Wolfpen Branch of Peter Fork of Chloe creek and within the lap of an older patent issued to Colbert Cecil in 1843. The McGuire-Sparks patent under which the plaintiffs' claim was issued in 1859. It called for certain lines of the B. Craig patent of 1838, and part of the lines of the Craig patent are also the lines of the more recent patent issued to McGuire and Sparks, and in locating the McGuire-Sparks patent it was found necessary, by the surveyors appointed by the court to locate the McGuire-Sparks patent, to first locate the B. Craig patent and from the lines of that patent and such other known objects as could be located in the McGuire and Sparks lines, locate the McGuire-Sparks patent. Three surveyors were appointed by the court at different times to survey and locate the lands in controversy and the several patents involved, and these surveys were made and reported in writing to the court in due course. To these reports of the surveyors were attached two maps, one map supporting the contention of Stratton, et al., and the other sustaining the claim of defendant Syck.

The plaintiffs in their petition aver that the defendants wrongfully entered upon certain lands belonging to plaintiffs and cut and removed a given number of trees of an alleged value. The answer denied the ownership of the plaintiffs of the land and timber mentioned in the petition and pleaded ownership in the defendant Syck by adverse possession to a certain given boundary or line which ran with the top of the mountain between Burning Fork and Peter Fork. A trial was had before a jury, at which the plaintiffs adduced proof of a chain of title from themselves, back to the McGuire-Sparks patent which covered the timber in controversy. The defendant Syck exhibited his chain of title from the Commonwealth to himself for the Colbert Cecil patent which also covers the land from which the timber was taken, if this last named patent be located as contended for by the defendant Syck, but if it be located as the plaintiffs assert it

should be, then it does not cover all the land in controversy, though it does include all the timber in dispute. The issue upon the trial to which the evidence was chiefly directed, was the correct location of the beginning corner of the Cecil patent. As the Cecil patent is senior to the McGuire-Sparks patent, and since the plaintiffs have no actual possession of the lands in controversy, it is conceded that the Cecil patent must prevail over the McGuire-Sparks patent at every point they may lap if title has not passed by adverse possession or by legal conveyance; but as a part of the Cecil patent which begins on the Peter Fork side, extends across the mountain on to the Burning Fork waters, the portion of the patent on the Burning Fork side is conceded to the plaintiffs. Aside from the evidence upon the subject of the location of the several patents, the defendant Syck introduced a number of witnesses to show that he and his predecessors had been in the actual, open, continuous, visible adverse possession of all the lands on the Peter Fork side of the mountain, and that there was a marked line along the top of the mountain between Burning Fork and Peter Fork, which indicated the extent of his boundary. He also introduced deeds back to his father, Jacob Syck, for the said land.

The sole question submitted by the court to the jury was the location of the beginning corner of the Cecil patent. On the maps introduced before the jury, the beginning corner contended for by the defendant Syck was at a beech stump identified by Jake Horton and indicated on the map by the leter "A," while the beginning corner as contended for by the plaintiffs is indicated by the letter "B" on the map. The court instructed the jury "that the plaintiffs are the owners of the land included in the Sparks-McGuire survey of date February 23, 1859, except to the extent that the land included therein is covered by the Colbert Cecil patent of date July 14, 1843, of which the defendants are the owners. The only question that the jury is to determine is the location of the Colbert Cecil survey, and the jury will determine only the question as to the correct location of the beginning corner of the Cecil survey, and will say in their verdict whether said Colbert Cecil survey begins at the place marked 'A' or at the place marked 'B,' on the maps introduced in the evidence." The jury after deliberation re-

turned the following verdict: "We, the jury, agree and find that the Cecil survey begins at the letter "A." Locating the beginning corner as the jury did, from the evidence, at the letter "A," which on the ground is a beech stump, the Cecil survey covers and includes all of the lands from which the timber in controversy was taken, and as the defendant, George Syck, not only produced record evidence of his ownership of the Cecil patent but also adverse possession of the portion of the land in controversy for more than fifteen and thirty years next before the commencement of the action, the jury was justified in returning such verdict, and the court did not err in entering a judgment declaring Syck the owner of all the lands in the Cecil patent lying on the Peter Fork side of the mountain, but it was error to adjudge Syck the owner of the two small tracts of one and one-half acres and five acres, respectively, on the Peter Fork side but outside of the Cecil survey and within the McGuire-Sparks patent, without having submitted the question of the adverse holding of these two small tracts to the jury by proper instructions, because under the pleadings in the case the claim of adverse possession was put in issue and it was a question of fact which was properly within the province of the jury.

The Wolfpen Fork referred to in the judgment is a branch of the Peter Fork which flows into Chloe creek.

From the evidence we are unable to tell whether the defendant Syck had enclosed, cleared, or took actual possession of either of the small tracts above referred to, or held them for the statutory period necessary to perfect title in himself. These small tracts of land may or may not be of sufficient value to warrant the interested parties in litigating the question of ownership but it will not be necessary to again try out the question of the proper location of the Cecil patent, and the judgment to the extent that it holds defendant Syck the owner of the lands included in the Cecil patent, as set forth on the map, is affirmed, but reversed with respect to the land outside of said patent and within the McGuire-Sparks patent claimed by the plaintiffs.

Appellant contends that there was no sufficient land warrant issued by the Pike county court upon which to base the survey and patent to Colbert Cecil of July 14, 1843, but we think the reasonable deduction to be drawn

from all the evidence upon the subject of the issual of the warrant by the Pike county court is in favor of the granting of the warrant. There is exhibited in evidence an order, entered on the Land Warrant Book in the office of the county court clerk of Pike county, which purports to be a copy of an order of the county court, and which refers to the fact that the county court had entered such an order in favor of Polley and Thornsberry. Said order is as follows:

"STATE OF KENTUCKY, ⎱ *Sct.*
   COUNTY OF PIKE. ⎰

     *"Pike County Land Warrant No.* 177.

"The surveyor of Pike county will survey for David Polley, Jr., and Martin Thornsberry one hundred acres of vacant and unappropriated land in the county of Pike agreeably to an order of the Pike county court.

"Given under my hand this 22 day of May, 1843.

           "Att: JOHN S. MIMMS, *Clk."*

From this evidence the presumption arises that the original order was regularly made by the Pike county court, and this presumption is not overcome by the failure of the county court clerk when called upon to produce the books containing the original order of the county court of May, 1843, so to do, especially in view of the fact that he had only a few minutes to devote to the search, and the further fact that the index to the order book was mutilated and the book itself was antiquated, dimmed, faded and incomplete. It was the duty of the Pike county court to open and hold a regular May term in 1843, and enter and sign orders at that term, and the presumption that it did so do must prevail in the absence of proof to the contrary, and the mere fact that the clerk in a few minutes' search was unable to produce the orders of that term of court is not sufficient to overcome the presumption, under the facts of this case.

This warrant was assigned and transferred by Polley and Thornsberry to Colbert Cecil, and Cecil delivered it to the county surveyor, who made an entry upon his books and the survey upon which the patent in question was issued.

It is the settled law in this state that a certified copy of such an order even appearing upon the surveyor's

books is presumptive evidence that the county court had made and entered such order, and this presumption in favor of an ancient record, such as this warrant, is not overcome except by evidence sufficient to repel the same. Mason v. Fuson, 171 Ky. 891. The clerk could not even find the orders of the Pike county court for its May term, 1843, though he did find the orders for the April and June terms for said year. The presumption in favor of the warrant is not overcome simply by the failure of the clerk to find the orders in the limited time given. If the sufficiency of the warrant upon which the Colbert Cecil patent is based be granted, then there is no question but that the appellees are the owners of that patent boundary to the extent that it lies upon the Chloe creek side of the watershed.

In the record we find an agreement between the parties that the timber in controversy stood entirely within the Colbert Cecil patent, whether located as contended for by the plaintiffs or as contended for by the defendants. This being true the proper location of the Colbert Cecil patent became the sole inquiry since the action was instituted to recover the value of the timber taken.

Under the judgment of the trial court it was error to require the defendants to pay any part of the cost, because if defendant Syck was entitled to recover all the lands which he claimed, as therein adjudged, the plaintiffs' petition being dismissed, the judgment should have required plaintiffs to pay the whole cost. This error, however, may be corrected by the lower court according to the judgment which may finally be entered.

The point is made by appellees that no sufficient statement of appeal accompanies the record in this case, and from an examination of it we are convinced that the point is well made, unless waived by failure of appellees to enter motion before submission. Section 739 of the Code provides, "that the statement shall show (a-b) the names of the appellants and appellees properly designated; (c) the term or day that the judgment appealed from was rendered and the page of the record on which it may be found (the record referred to is the one to be used on appeal and not the record in the circuit court); (d) whether summons or warning order shall be issued and for whom. Section 740 of the Code provides, "that no

appeal shall be docketed by the clerk until the appellant complies with the provisions of section 739." The statement of appeal accompanying this record after styling the case, is as follows:

"Judgment rendered **on the 31st** day of March, 1917."

"Motion and grounds **for new trial** overruled on the 31st day of March, 1917."

"No summons or warning order desired."

It does not mention the page of the record on which the judgment may be found. In the recent case of Arnett v. Deem, 181 Ky. 764, it is said:

"Furthermore, the statement of appeal required by Section 739 of the Civil Code, is wholly inadequate; it makes no reference to the judgment appellants would have us reverse. And, as no attempt has been made by appellant's counsel to help the situation by classifying the questions discussed in their brief, as is required by Rule III, we do not feel sure that any classification of questions that we might be tempted to make would adequately present their argument. The appeal should not have been docketed, and it is now stricken from the docket. Paxton, Recr. v. Columbia Trust Co., 181 Ky. 515.

This objection can not avail appellees because no motion to strike the appeal from the docket was made before the case was submitted. As said in City of Louisville v. Clark, 105 Ky. 392: "But as there was no motion to dismiss the appeal before the submission of the case in this court, appellees waive their right to insist upon the dismissal on account of want of a sufficient statement." City of Louisville v. Cassady, 105 Ky. 424; Tarvin v. Tarvin, 20 R. 730.

The judgment is affirmed in so far as it awards the land within the Cecil patent to appellee Syck, and reversed for a new trial as to the two small tracts of land claimed by Syck by adverse possession.