## Board of Drainage Commissioners of McCracken County, et al. v. Lang, Judge, et al.

## Board of Drainage Commissioners of McCracken County, et al., Ex Parte Petitioners and Beyer, et al., Ex Parte Petitioners.

(Decided February 20, 1920.)

### Appeals from McCracken Circuit Court.

1  Drains—Construction of Statutes.—Section 2380b, subsections 1 to 61, volume 3, Kentucky Statutes, enacted in 1918, held not to repeal and supersede the drainage act of 1912, being section 2380, subsections 1 to 50, but to provide a separate, alternative method for the reclamation of wet lands, in addition to the method provided in the act of 1912.

2.   Drains—Proceeding to Establish Drainage District.—A proceeding
     to establish a drainage district  under  the 1912 act  was not
     terminated when the viewers' report was confirmed, August 26,
     1918, but was still pending September 30, 1918, when a motion
     was entered to have the organization completed under the 1918
     act, since under the 1912 act, as amended, the jurisdiction of
     the county court extends to the complete organization of the
     drainage district, which is not affected until after the owners
     of the land affected have had their day in court.

3.   Drains—Proceedings to Establish.—Under section 54 of the 1918
     act the petitioners or board of drainage commissioners may have
     proceedings begun under the 1912 act completed under the 1918
     act and the district established and organized under the pro-
     visions of that act.

4.   Drains—Act Applicable  to Proceedings  Relating  to Drains.—
     Under the drainage act of 1918 the option was given to the peti-
     tioners or the board of drainage commissioners to determine which
     act should apply to proceedings instituted or pending and the
     court has no discretion in the matter. Hence the county court
     erred in overruling the motion of the board of drainage com-
     missioners to have the district completed under the new act,
     and the circuit court erred in sustaining this ruling.

5.   Drains—Terms of Drainage Commissioners.—By the 1912 act as
     amended commissioners appointed under that act prior to the
     amendment would continue as such until the expiration of their
     four years' terms, subject, however, to the right of the county
     judge at any time to remove them, as provided in that act.

6.   Drains—Terms of Drainage Commissioners.—Drainage commis-
     sioners appointed under the drainage act of 1912 are officers
     as the term is used in section 161 of the constitution. Hence
     that provision of section 12 of the 1918 act (section 2380b,
     subsection 12 Kentucky Statutes) is violative of section 161 of
     the constitution insofar as it attempts to extend their terms of
     office.

7.   Drains—Bond of Commissioners.—Since these commissioners
     held office under the act of 1912 they were required to give
     bond in the sum of $5,000.00 as required by that act, rather than
     $2,500.00 as required by the 1918 act.

W. MIKE OLIVER for appellants.

JOHN K. HENDRICK and A. M. NICHOLS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming
in part and reversing in part.

These three actions arising out of the same matters
are heard together here, as they were in the circuit court,
in which one of them originated, and to which the others
had been appealed from the county court.

Two principal questions of law are presented for decision, namely:

(1) Whether in a proceeding to establish and organize a drainage district, commenced under the drainage act of 1912, the petitioners and board of drainage commissioners had the right, after the drainage law enacted by the 1918 session of the legislature became effective, to complete the organization of the district under the latter act rather than that under which the proceedings were begun.

(2) Whether the county judge had the right, after the 1918 drainage act became operative, to remove from office drainage commissioners that he had theretofore appointed under the drainage act of 1912.

Preliminary to a decision of these two questions it will be necessary to determine whether the legislature intended that these two drainage acts should constitute a single system or code of laws on the subject or whether it was intended to provide two separate, independent, alternative laws on the same subject.

The first of these laws enacted at the 1912 session of the legislature and being section 2380, subsections 1 to 50, Kentucky Statutes, provides a method and the procedure in detail for reclamation of wet lands by district drainage. The second law enacted at the 1918 session of the legislature, being section 2380b, subsections 1 to 61, volume 3, Kentucky Statutes, provides another method, different in most of its provisions, for doing the same things that could have been done under the 1912 act, but is more comprehensive in its scope in that some lands can be reclaimed under it that could not have been reclaimed under the 1912 act.

Ordinarily under such circumstances the latter law would repeal and supersede the earlier one. But the legislature has indicated quite clearly that such was not its purpose here; that it was intended rather to provide two separate alternative methods for the reclamation of wet lands. That such was the legislative purpose is obvious, not only from certain provisions of the new law, but also from the fact that at the same session, and two days after the new law was enacted, the earlier act was quite extensively amended, evidently to cure defects therein that had been pointed out a short time previously by this court in Williams v. Wedding, Judge, 165 Ky. 361, 176 S. W. 1176. Neither the amendment to the old

law nor the new act carried an emergency clause and both became effective the latter part of June, 1918. Many if not most of the provisions as to procedure, &c., contained in the two acts and intended to accomplish the same end are so radically different and entirely inconsistent that it would be absolutely impossible to reconcile these provisions so as to weld the two acts into one general law on the subject. Not only so, but the new act, in section 3, now subsection 3 of section 2380b, volume 3, Kentucky Statutes, contains the provision:

"Any person or persons desiring to prosecute an action under the provisions of this act shall so state in the petition and unless it is so stated in the petition it shall be deemed that said proceedings are brought under the act of 1912, same being section 2380 of Kentucky Statutes, Carroll's edition 1915."

In addition, if further evidence were required that two separate laws or systems were intended, we find in subsection 54 of the new act an optional provision for transfer to and completion under its provisions of proceedings begun but not completed under the 1912 act.

The conclusion is therefore inevitable that the legislature intended to and did provide two separate alternative codes or systems for the reclamation of wet lands by drainage.

Prior to 1918 drainage districts had been established in McCracken county and three drainage commissioners for the county had been appointed for a term of four years by the county judge of McCracken county (appellee, James M. Lang) on August 16, 1916, under section 7 of the act of 1912, being subsection 7 of section 2380 Kentucky Statutes, which was amended by subsection 7 of the amendatory act of 1918, now subsection 7 of section 2380, volume 3, Kentucky Statutes. And prior to 1918 there had been begun in the McCracken county court a proceeding under the 1912 act to establish the Mayfield drainage district, in which viewers had been appointed to classify lands as to the benefits to be received, &c. These viewers had filed their report a short time before the new 1918 act and the amendment to the 1912 act became operative, but this report was not confirmed by order of court until August 26, 1918, after the 1918 act became effective. So much of this order therefore as attempted to finally refer the district to the drainage commissioners of the county for operation, before the organ-

ization of the district had been completed as required by the new acts, was premature as will hereafter appear.

On September 30, 1918, the petitioners in the proceeding to establish and organize Mayfield drainage district, and the drainage commissioners of McCracken county, filed a motion in the county court that the organization of the Mayfield drainage district be completed under the new 1918 act instead of the 1912 act as amended, under which the (proceeding had been commenced. This motion the court overruled and whether correctly so or not is the first question presented for our decision.

Appellants, Poat and Beyer, two of the three drainage commissioners appointed by the county judge under the 1912 act, on August 16, 1916, were removed from office by the county judge on October 26 and November 4, 1918, respectively. Whether the county judge had authority so to do is the second question before us.

The decision of the first of these two questions of law depends largely upon whether the proceeding to establish Mayfield drainage district was still pending in the county court on September 30, 1918, when appellants attempted to have an order entered therein to complete the organization of the district under the 1918 act. As pointed out by this court in Williams v. Wedding, *supra,* under the act of 1912 the confirmation of the report of viewers and a final reference of the case to the drainage commissioners for all further proceedings terminated the proceeding to establish the district, and that insofar as sections 32 and 49 of that act undertook to deprive the property owners of a remedy against the action of the board of drainage commissioners in assessing taxes and liens against their lands these sections were unconstitutional. The amendment to the 1912 act passed at the 1918 session of the legislature, in section 31 thereof, evidently to meet this constitutional objection to the original act, provided that after the viewers had filed their report classifying the property as to advantages to be received from the establishment of the drainage district, the drainage commissioners shall prepare "an assessment roll or drainage tax duplicate giving a description of all the land in said drainage district, the name of the owner so far as can be ascertained from public records, and the amount of assessment against each of the several tracts of land." Provision

is further made in that same section for a trial by the county court of complaints or objections by the landowners of assessments thus made against their lands. For this purpose it is provided that the assessment roll prepared by the drainage commissioners ''shall be filed with the clerk of the county court in which the proceeding is pending;'' that the property owners shall be notified thereof by publication; that thereafter at the time fixed for the hearing the court shall hear in a summary way any and all objections to the amount of the costs of said improvement as set out in the statement made by the drainage commissioners, and filed with said assessment roll, &c., and that the judgment of the court thereon should be appealable to the circuit court and thence to this court.

It is therefore clear that this section of the amendment to the 1912 act attempts at least to meet the consitutional objections to the 1912 act pointed out in Williams v. Wedding, *supra*, by providing a method for determining, in the proceeding to establish the district, and after due notice all property rights of landowners, which extends the jurisdiction of the county court over the proceedings to establish the district after the confirmation of the viewers' report and until a decision by the court of any and all objections that may be interposed by landowners against the assessment of taxes for the improvement against the lands.

Therefore the proceeding to establish Mayfield drainage district was not terminated in the county court when the report of the viewers was confirmed on August 26, 1918, but was still pending in that court when, on September 30, 1918, appellants entered the motion to have the organization of the district completed under the 1918 act rather than the 1912 act, since the drainage commissioners had not yet filed their report of assessments, &c., as required by the amendment to the act of 1912. Under the 1912 act, as amended, the jurisdiction of the court of the proceeding does not terminate, as it did before it was amended, when the report of the viewers is confirmed, but continues until the property owners have had their day in court upon the question of damages, the assessment of improvement taxes against their property, &c. In other words, the jurisdiction of the county court now extends not only to the establishment of the district, which is accomplished by confirmation of the viewers'

report, but to its complete organization as a district as well, which is not effected until after damages are awarded, assessments made and property owners aggrieved thereby have had a trial.

Not only does the new act, as heretofore pointed out, provide that the petitioners at the beginning of a proceeding to establish a drainage district might, if they so requested, have it established and organized under the new 1918 act, but section 54 of that act also provides that after such proceeding has been started under the 1912 act the same may be completed under the new act at the option of the petitioners or the board of drainage commissioners, should either elect so to do. This option concededly is given to the petitioners or the drainage commissioners in the first part of section 54 of the new act to be exercised by requesting the court before the viewers have reported on the classification of lands and benefits, to order them to report as provided for in the 1918 act rather than the 1912 act.

Appellees contend that this is the only time such a request can be made, and that since the viewers' report had been filed and confirmed when appellants made their motion on September 30, 1918, their motion came too late, even if the proceeding was then pending, and they then had no right and the court no power to order subsequent proceedings to be had under the new 1918 act.

This construction of section 54 of the new act, however, gives no force or effect to the latter part of that section wherein it is provided "that in districts established and partly but not completely organized, under other general laws, which elect to complete the organization under this act" the assessment shall be completed under the 1912 act, "and when said assessment record has been completed same shall be filed with the clerk of the court wherein the proceeding is pending, as in this act provided, and be governed in all other respects as provided herein; but, unless the petitioners or board of drainage commissioners having charge of the proceedings desire to thereafter proceed under the provisions of this act, the proceedings shall be continued under existing laws and such amendments thereto as may be enacted."

This clearly indicates that after the viewers' report has been filed and confirmed the assessment must be completed under the 1912 act and the organization of the

district completed under that act "unless the petitioners or board of drainage commissioners having charge of the proceeding desire to *thereafter* proceed under the provisions of this act."

Obviously therefore either the petitioners or the board of drainage commissioners, at any time while the action is pending to establish and organize the district, can have a proceeding begun under the 1912 act transferred to and completed under the 1918 act either before the viewers have reported, by asking that their report be made in accordance with the new act, or after that report had been filed and confirmed by indicating to the court their desire that the proceeding thereafter "proceed under the provisions of this act."

To summarize our conclusions, we think it is clear that the legislature intended and did provide two separate, alternative systems or general drainage laws; that all proceedings pending when the 1918 act became operative, or thereafter begun, should be "deemed by the court" to be under the 1912 act as amended unless the petitioners at the beginning of the action, or the petitioners or board of drainage commissioners at any time while the proceeding to establish and organize the district is pending, desired otherwise; but that when the petitioners at the beginning of the action to establish and organize a district, or the petitioners or drainage commissioners at any time during the pendency of the action, desired to have the proceeding under the 1918 act rather than the 1912 act as amended, that this should be done. A discretion was not lodged in the court to determine which act should apply to a proceeding instituted or pending for that purpose, but the option was given clearly to the petitioners and the board of drainage commissioners.

It therefore results that the county court erred in overruling appellants' motion to have the organization of the Mayfield drainage district completed under the new act, and that the circuit court erred in sustaining its action.

2. Appellants, Poat and Beyer, were two of the three drainage commissioners appointed by the county judge on August 16, 1916, under section 7 of the 1912 act. Section 37 of the same act expressly gave the county judge the power to remove them at any time and without cause. The removal was not attempted, however, until

after the new act and the amendment to the old act passed at the 1918 session of the legislature had become operative.

Neither of these new enactments in terms repealed section 37 of the old act which gave to the county judge power to remove drainage commissioners theretofore appointed by him, but section 7 of the amendment to the 1912 act provides in effect that drainage districts established under that act shall be, after the expiration of the term of the three commissioners then in office, under the control of a single commissioner whom the county judge is empowered to appoint when the terms of commissioners then in office shall expire.

It seems clear therefore that under the 1912 act as amended appellants, Poat and Beyer, as drainage commissioners, would continue as such until the expiration of their four year terms, or until August 16, 1920, subject, however, to the right of the county judge at any time to remove them.

Section 12 of the new act provides that the three commissioners then in office in McCracken county under the 1912 act "shall remain in office for a period of four years from and after the passage of this act without being reappointed," and "shall have charge of all work to be done in any district organized under this act" until commissioners are to be appointed as provided thereunder.

While two separate alternative acts were clearly intended, it is equally clear that under the contingency here both acts were for a time to be administered by a single board, the one then in office under the old act, whose members "shall remain in office" until, &c. Obviously the two acts must be construed together to ascertain the rights and duties of the one board during this interim. The new act creates no new board of commissioners until the expiration of this interim, but during such time imposes upon the old board the duties of administering the new act in addition to the duties imposed by the old act of administering it, as amended, until the terms for which they were appointed expire; that is, in this case until August 16, 1920. The new act does not appoint them to an office, but expressly provides they shall "remain in office" without reappointment not until their offices expire but for four years from the passage of the new act. The effect, there-

fore, of the new act is not to give them a new office, but to impose new duties and extend the terms of the office they already held under the old act beyond the expiration of their terms and until July, 1922. This attempted extension of their terms of office is violative of section 161 of our Constitution and void since the commissioners are officers within the meaning of that section. Constitution of Kentucky, section 107; Kentucky Statutes, section 2380-7; City of Louisville v. Wilson, 99 Ky. 598; Fox v. Landtrip, 162 Ky. 178; Lowry v. City of Lexington, 113 Ky. 763.

As these commissioners held office under the 1912 act only and subject to the provisions of that act as amended, they were subject to removal thereunder, although they were charged as a board with the administration of the new act until commissioners could be appointed thereunder, unless the legislature intended to and did repeal section 37 of the old act by providing in section 12 of the new act that "such drainage commissioners so appointed and in office at the time of the passage of this act shall remain in office, &c." We do not think such an inference is reasonable, and conclude the commissioners "so appointed and in office" were to remain in office under the old act; that its provisions, as amended, must be looked to for their tenure of office, and that the county judge had the power to remove appellants, Poat and Beyer. It also follows from this conclusion that so long as they held office under the old act they were required to give bond in the sum of $5,000.00 rather than $2,500.00 as provided for commissioners appointed under the new act.

Wherefore the judgment in the ex parte proceeding to establish and organize the Mayfield drainage district is reversed and remanded for proceedings consistent herewith. The judgments in the other two cases are affirmed.