## United States National Bank, et al. v. Young, et al.

(Decided December 17, 1926.)

### Appeal from Daviess Circuit Court.

1.  Judicial Sales—Outstanding Liens May be Credited on Sale Bonds of Purchaser at Decretal Sale.—Generally purchaser at decretal sale is entitled to have credited on his sale bonds amount of any outstanding valid liens against property purchased.

2.  Vendor and Purchaser—Owner of Land, Being Liable for Drainage Assessments as They Mature, on Sale Thereof, is Liable Only for Past-Due Assessments (Drainage Act [Ky. Stats., Sections 2380-34, 2380-42]).—Under Drainage Act (Ky. Stats., sections 2380-34, 2380-42), owner in possession of land on which future drainage assessments are made is liable therefor at time assessments severally mature, and on sale of lands is liable only for past-due assessments.

3.  Judicial Sales—Future Drainage Assessments Cannot be Credited on Bond for Purchase Price of Property at Decretal Sale.—Purchaser at decretal sale of land compromising part of drainage district, against which there has been assessed future levies, made lien on land by statute, cannot have amount of future drainage assessments credited on his bond for purchase price.

FLOYD J. LASWELL for appellants.

E. B. ANDERSON and O. L. FOWLER for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

The appellant filed its equitable action against W. V. Young and wife seeking the enforcement of a mortgage lien upon their land. It made certain other persons, alleged to be lienholders, parties, and during the progress of the action the executors of S. W. Anderson, deceased, filed their answer and cross-petition also asserting a lien, and alleging that the lien note formerly owned by one of the original defendants had been sold and transferred to S. W. Anderson, their testator.

The court entered a judgment directing a sale of the lands, and adjudging that the executors of S. W. Anderson had a first lien, R. Young a second lien, and the plaintiff bank a third lien.

At the master commissioner's sale the executors of Anderson, who were the holders of the first lien, became the purchasers at an amount something like $2,700.00 over and above their debt. They executed no bond for the amount of their debt, but executed bonds only for the excess, payable chiefly to the two other lienholders.

Upon the filing of the commissioner's report of sale the purchasers filed exceptions to the sale upon the ground that there were certain lien debts against the land they had purchased, designating them, the holders of which had not been made parties to the action, and which liens were a matter of record chiefly, and the purchaser asked the court either to sustain their exceptions, or that the purchaser be allowed a credit for the amount of such liens upon the purchase money bonds so executed. The liens with one exception so referred to in the exceptions were for county and state taxes, past due drainage assessments, and for insurance premiums paid by the purchaser to protect the property from loss by fire or tornado. The court credited each of these liens upon the purchase money bonds, and also credited thereon another item, set up in the exceptions, of $1,547.08 representing the future drainage assessments on the property, no part of which was due at the time of the sale, and which thereafter became due in annual installments throughout a period of six years.

The propriety of the credit last above referred to is the only question presented on this appeal.

The sale was had in 1924, and the drainage assessments against the land had theretofore been fixed in a proceeding to establish the drainage district, and the $1,547.08 is the aggregate amount of six annual installments of drainage assessments payable and collectable in each of the years 1925, 1926, 1927, 1928, 1929 and 1930.

No question is raised as to the validity of the establishment of the drainage district, or as to the assessments aggregating $1,547.08 so assessed against the land; but the sole question is whether a purchaser at a decretal sale of land comprising a part of a drainage district, against which there has been assessed future levies which

are by statute made a lien upon the land, may have the amount of such drainage assessments credited upon his bond for the purchase price.

Ordinarily a purchaser at such sale, upon a showing on a trial of exceptions, is entitled to have credited upon his sale bonds the amount of any outstanding valid lien against the property he has purchased; but our consideration of the drainage act of this state convinces us. that as to such future drainage assessments it was not contemplated or intended that the purchaser might be credited therefor. On the contrary, that it was the intention of the General Assembly that the owner in possession of the land upon which such assessments had been made at the time they severally mature should be liable therefor and that at the time of such sale it was only for past due drainage assessments that the vendor was liable.

The policy of our drainage acts is to provide for the improvement of wet and unproductive lands by a system of drainage, the cost of which is to be assessed against the property intended to be benefited, and that when deemed desirable the expense might be provided for in assessments against the property payable throughout a long term of years; and in furtherance of this policy the assessments where there has been a change in ownership, were to be met by the owner in possession at the time the several assessments fell due. Under the statute some such assessments may be made payable 30 years after they are levied, and it was not the purpose of the General Assembly to hamper or to make more difficult the sale and conveyance of lands throughout such periods; and having in mind the benefits accruing throughout the future years made the future owner liable for such future assessments.

For instance, in section 2380-34, it is provided:

"The drainage commissioners, in dividing the unpaid assessment into installments, shall fix the time for the payment thereof in each respective year so that each installment shall be due at least 120 days before the bonds in that series, which have been issued to anticipate the collection of that installment, shall become due, and it shall be the duty of each landowner whose land is in lien for the payment of said bonds to pay the installment due thereon against

his land, with all interest due at that time on that installment and deferred installments.''

Then again, in subsection 42 of the same section, in dealing with the question of liability for the payment of such future installments, it is provided:

"Any person who shall acquire title, by purchase, devise, inheritance or otherwise, to any land affected by any proceeding under this act, after the preliminary report of the viewers is filed as herein provided for, shall be deemed privy to the person owning or in possession under claim of ownership at the time of filing such preliminary report, *and shall be bound to the same extent as such owner at that time would be bound if he had remained the owner.* The land assessed shall in each instance be liable for the assessment against it, and *each assessment and each installment of any assessment shall be paid by the owner in possession at the time such assessment or any installment thereof becomes due,* but as between vendor and purchaser, and in the absence of any agreement to the contrary, the owner, in possession at the time such assessments are certified by the board of drainage commissioners to the treasurer, sheriff or other collecting officer for collection, shall be liable for the tax.''

Clearly the statute (subsection 42) intended to make the drainage assessments a continuing burden upon the lands, to be met by the owner in possession at the time they severally matured; and this upon the conception that the benefits of the drainage would continue throughout the assessment period.

In the very recent case of Liberty Insurance Bank v. Vance, 213 Ky. 352, the precise question we have here was passed upon, and the drainage statutes quoted above were interpreted. In that case, after considering these statutes, the court concluded as follows:

"This section seems to take assessments for drainage purposes out of the general rule, and to require the purchaser in all such cases, whether at private or public sales, to assume and pay all taxes which were not due at the time of the purchase, and to require the vendor to pay the taxes in cases where

the taxes were due at the time of the sale of the land."

In this case there is no claim there was any agreement, and the judgment of sale makes no reference whatsoever to these future drainage assessments; and obviously, therefore, under the terms of this statute, the purchaser at such sale must have understood and contemplated that the future assessments were to be met by him.

The judgment is reversed, with directions to set aside the order allowing the amount of these future assessments as a credit upon the sale bonds.