## Muffett et al. v. Black, Drainage Com'r.

(Decided March 13, 1936).

JOHN B. WILSON and BEN D. RINGO for appellants.

KIRK & BARTLETT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At its 1912 session, the General Assembly of this commonwealth enacted chapter 132, p. 483, of the Session Acts of that year. From time to time some of its sections were amended, one of which amendatory acts was chapter 114, p. 502, of the Session Acts of 1918. At the time of the commencement of proceedings for organizing the district involved in the instant case (February 28, 1920), the 1912 act, as so amended, now appears in the 1930 Edition of Carroll's Kentucky Statutes as sections 2380 to and including section 2380-49a, and they, for convenience, will be referred to as the 1912 act. It provided for a system of drainage of low and wet lands so that they might be redeemed for agricultural purposes. The machinery provided therein for the accomplishment of that purpose consisted of various outlined steps prescribed by the statute, and if the promoters of the ditching scheme were finally successful the result was the organizing of a drainage district in accordance with the prayer of the promoters made in their application for such establishment. Further provision was made in

the statute for the raising of funds with which to construct the principal ditch with its laterals within the territory of the established district.

The same General Assembly at its 1918 session enacted chapter 64, p. 192, of the Session Acts of that year, and which now appear, as since amended, in the same Kentucky Edition of the Statutes, supra, as sections 2380b-1 to and including section 2380b-61. That act, as later amended, will be referred to as the 1918 drainage act. It created the right and provided the necessary legal machinery for the accomplishment of the same purpose as that provided for by the 1912 act, and in the case of Board of Drainage Commissioners of McCracken County v. Lang, 187 Ky. 123, 218 S. W. 736, we held that the 1918 act did not repeal the 1912 one, but that both of them operated concurrently, with the right of choice by the promoters of the establishment of a drainage district to choose which statute they preferred to employ in procuring the establishment of drainage districts. Just why the Legislature desired the enactment of two statutes, with practically the same provisions for the accomplishment of the same purpose, has never been revealed, but it is not a material question of judicial inquiry. It is sufficient to say that in the Lang case we held that, because of certain provisions in the 1918 act, one of which was a provision in its section 54 (now section 2380b-54 of the 1930 Edition of Carroll's Kentucky Statutes) that ''in any proceeding for any of the above purposes now pending under any law of this Commonwealth, such proceedings may, from and after the passage of this act, be prosecuted under the provisions of this act,'' etc., the Legislature did not intend to repeal the 1912 act by its enactment of the 1918 one, but that they should have concurrent effect and operation.

On February 28, 1920, following the enactment in 1918 of section 2380-49a, supra, appellants herein inaugurated the proceeding provided for by the 1912 act to establish a drainage district in Ohio county, Ky., to be known as ''Roy Muffett Drainage District,'' and in 1922 the district was established and other necessary steps taken to sell bonds with which to provide funds for the construction of the ditches, which was later done. The principal ditch, with its laterals as so con-

structed, has been continuously maintained up to the filing of this proceeding before the Ohio county court by appellants on July 13, 1932. The appellee, T. H. Black, is the drainage commissioner of Ohio county, and he was sole defendant to the instant proceedings, the authority for which is contained in section 2380-49a, supra, which, as we have said, is an amendment to the 1912 act and was enacted in 1918 by chapter 114, p. 502, of the Session Acts of that year. It had for its sole purpose the discontinuance of public ditches that had been constructed in a district organized under the 1912 act, or rather their future maintenance by taxation of the landowners in the district as prescribed for under the judgment organizing the district, and which in turn was rendered in accordance with the direction of the provisions of that act. It is conceded that all of the necessary steps were complied with by appellants, except an alleged defect in parties defendant—it being contended that the holders of the unpaid bonds of the district were not before the Ohio county court to which application was made for the discontinuance.

This action was filed in the Ohio county court by appellants to discontinue the drainage district for maintenance assessment purposes with all interested parties properly before the court, and on June 10, 1933, judgment was rendered in accordance with the prayer of appellants' petition or application. There was filed with the initial application in the Ohio county court for the purpose of obtaining the discontinuance a written mutual agreement of the land holders within the district to thereafter maintain the ditches that had been constructed therein by and with their own labor, or voluntarily contributed funds which they among themselves guaranteed would thereafter be complied with, and in their application (or initial pleading) they reiterated their pledge to carry out that agreement; it being plainly manifested that the sole object sought by them was a deliverance from the duty, and relief from the burden of continuing to pay annual maintenance assessments to keep the ditches in repair, and the judgment of the court, among other things, said: "This order is made in view of the undertaking of the petitioners as set out in the pleadings filed in this action."

An appeal was taken by the drainage commissioner from that judgment, as is provided for by the same section under which the proceeding was instituted (section 2380-49a, supra), to the Ohio circuit court. It lingered on that docket for some time during which certain steps of preparation were taken by the parties (which are unnecessary to relate here) until the 21st day of February, 1935, when appellants, to which we shall hereinafter refer as "petitioners," offered and moved the court to enter this judgment: "This cause coming on to be heard, having been pending in this court on appeal from an order of the Ohio county court granting the prayer of the petitioners herein to discontinue that certain drainage district known as the Roy Muffett Drainage District in Ohio County, and the court having heard argument of counsel and being fully advised, it is now considered and adjudged that said drainage district be and the same is now discontinued as a public drainage district in Ohio county, and the petitioners herein and all other landowners are now and shall be hereinafter relieved from any other or further assessments on their lands for the maintenance of said drainage ditch; but this judgment shall be without prejudice to the rights of any creditors of bondholders of said drainage district, and whatever rights may appertain to the enforcement of the claims of the bondholders are not affected by this judgment; but no other or further assessments shall be laid upon the lands in this district, except only for the purpose and to the extent that there may be liabilities or liens upon the lands for the payment of outstanding bonds only. The petitioners herein will recover of T. H. Black, Drainage Commissioner of Ohio County, their costs in and about this action expended, both in this court and in the county court." The drainage commissioner (appellee) objected thereto, and his objections were sustained, followed by a judgment dismissing the discontinuance proceeding, and from such orders appellants prosecute this appeal.

Much is said in briefs concerning defective parties defendants and which is based upon the reason to which we have hereinbefore referred; it being vigorously argued that the holders of outstanding bonds should have been made parties or otherwise represented in the litigation. It is also argued by counsel

for appellee in support of the judgment that the court properly rejected the tendered judgment by appellants (referred to in the record as "Paper X") because it directed, in apparent absolute terms, the discontinuance of the drainage district as such for all purposes and which, it is contended, would destroy the right of the drainage commissioner to continue to function with reference to assessed lands in that district whensoever necessary to raise funds to pay outstanding indebtedness, including unpaid bonds; and for that reason alone, if for no other, the court properly refused to adopt it as the judgment of the court. There might be something in that argument if the tendered paper did not by express provisions therein contained specifically provide for and guard against such nullifications by saying that "this judgment shall be without prejudice to the rights of any creditors or bondholders of said drainage district, and whatever rights may appertain to the enforcement of the claims of the bondholders are not affected by this judgment." It is then stated in the tendered judgment that only future maintenance assessments are dispensed with or discontinued, except in so far as might be necessary to take care of outstanding indebtedness that may have theretofore been incurred for such maintenance purposes. In other words, that if there were any such outstanding obligation or obligations which were legitimately incurred the district and all officers and agencies connected therewith would continue, with preserved functionary rights, until those obligations shall have been met. As a matter of fact there were only $3,500 of bonds outstanding and unpaid when this discontinuance proceeding was inaugurated in the Ohio county court, and the drainage commissioner, for and on behalf of the district, then owned something like 400 acres of land which had been purchased at a sale to realize prior assessments, from the proceeds of which in all probability that $3,500 could be realized. In short, the proceeding sought and the only relief asked by it and by petitioners' tendered judgment in the Ohio circuit court was relief against *future* maintenance assessments and that the district be discontinued and dissolved as a future maintenance agency. The section of the statute under which the proceedings were taken (section 2380-49a, supra) does not condition the

right upon an obligation of the petitioners to them-selves continue the maintenance of the ditches there-after, but the petitioners in this case were, to say the least of it, generous enough to solemnly promise that they would continue to do so. Whether or not such an obligation so entered into may be enforced is to-tally beside the question for determination, and we will not attempt to do so in this opinion.

It is also argued on behalf of appellee in opposi-tion to the granting of the rights sought by petitioners that it may become a question as to whether the ag-gregate outstanding indebtedness, including the un-paid bonds, may be collected from other lands than the tracts against which such defaulting assessments were made, and therefore the tendered judgment should not have been filed. A sufficient answer to that con-tention is that such rights are expressly reserved and preserved in the tendered judgment.

No landowner whose lands are affected by the ditches interposed any objection to the tendered judg-ment; but, on the contrary, those who did not express-ly join as parties in the application were made par-ties defendant and duly notified, and some of them came in and later joined in the prayer of the applica-tion, while others remained silent, thereby indicating that all of them (including the silent ones) favored the discontinuance sought. Counsel for appellee rely on the case of Hatchell v. Board of Drainage Commission-ers of Hickman County, 191 Ky. 246, 229 S. W. 1036, and the case of State v. Missouri State Life Insur-ance Co., 228 Mo. App. 38, 65 S. W. (2d) 182, 183. The Missouri case was decided by an intermediate appel-late court in that state. We have examined it and found the questions therein determined have no ap-plication whatever to those involved and arising from the facts of this case. But if it were otherwise we would then not feel bound to follow it, since our ques-tion is a local one and is to be determined by the pre-vailing law in this jurisdiction which is to be found in the statutes and enactments to which we have here-inbefore referred.

Neither does the domestic Hatchell case apply to the facts of this one. The only question there involv-ed was a construction of section 2380-49a, supra, so

as to determine the conditions and circumstances un-der which its provisions might be invoked. The relief provided for by it was sought by the original promot-ers for the establishment of the drainage district *be-fore* any ditches were dug or constructed, and after all necessary judicial orders and actions had been tak-en for the establishment of the district, and the opin-ion held that the section could only be invoked to dis-continue future maintenance of ditches that had been constructed and that the district as such could not be discontinued before any such construction; it being pointed out in the opinion that if any such discontin-uance or abandonment relief was desired, the time when it should have been sought had already passed in that case, and which was tantamount to determining that the right of such discontinuance would exist and could be invoked *after* the ditches had been dug. More-over, the proceeding for the establishment of the dis-trict and the construction of the ditches in that case were taken under the 1918 drainage act, supra, and not under the 1912 one, to which alone is section 2380-49a an amendment. Because of such conclusions, this court, in the Hatchell case, supra, declined to pass on the constitutionality of section 2380-49a; but that ques-tion, as we have said, is argued and presented herein by learned counsel for appellee, and the only case re-lied on by them in support of that argument is Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017. It lucidly deals with the constitution-al requirements embodied in section 51 of our Consti-tution, and which is the same section relied on herein as invalidating section 2380-49a, supra.

We have on this occasion and many other prior ones closely read the Spencer opinion and completely agree with all of its enunciations, but we have been unable to find that any of them applies to the attacked statute embodying the questioned section of our stat-ute, and which, as we have seen, is chapter 114, p. 502, of the Session Acts of 1918, and was, as we have said, an amendment *exclusively* applying to the 1912 act. Its title was and is: "An Act to amend Section 2380 of the Kentucky Statutes, Carroll's Edition, 1915, and Sub-section Two (2), Seven (7), Ten (10), Thirty-one (31), Thirty-four (34), and Forty-nine (49) of said section, and to enact Sub-section Forty-nine A (49a) of said section." It will be noticed (and which the

body of the act literally followed) that the title specifically pointed out the sections of the 1912 act that were intended to be and were amended, and in the body of the act those sections were incorporated, with the amendatory alterations. The title also specifically points out that its purpose was to add to that act another subsection designated as "49a" which was done therein and is now the section attacked in this case. The right and authority of the Legislature to enact it is not called in question, and the only attack upon it emanates from the contention that the title of the act containing it did not conform to the provisions of section 51, supra, of our Constitution. No such question, as sustaining counsel's contention, was presented or determined in the Spencer opinion.

In the case of South v. Fish, 181 Ky. 349, 205 S. W. 329, the exact question now under consideration was presented, but in reverse form. The title of the act there involved (relating to the State Board of Health) specifically prescribed the sections that were to be amended by the act without any intimation therein of any intention to enact an entirely new section, and we held that the newly enacted subsection (No. 20 in that case) was invalid, since it was beyond and outside of the purview of the title of the act. Throughout that opinion it is stoutly implied that it would have been competent for the Legislature to enact the discarded section in that case if the title had been framed so as to indicate such a purpose. That omission was not repeated in the enactment of chapter 114 of the 1918 Session Acts, supra, and its enacted subsection 49a, which is now section 2380-49a, was strictly in accordance with the title of the act, and for which reason the argument now under consideration against its constitutionality cannot be accepted.

That it is competent for the Legislature to prescribe for the discontinuance, dissolution, or abandonment of a drainage district, "provided private rights are not interfered with or impaired," is pointed out by the text of 19 C. J. 712, sec. 206. We are confident that no contradictory statement can be found in any opinion or text, unless, perchance, there should be a constitutional provision inhibiting it. The establishment of drainage projects, or the enactment of provisions whereby they may be created, lies entirely with-

in the discretion of the Legislature, and it would seem to comport with logic and common sense that it would also have the authority to abolish, abandon, or discontinue them in the absence of a constitutional inhibition, in the exercise of the same legislative discretion, provided, of course, that in doing so acquired private rights by third parties are preserved. The section of the statute under which this proceeding was taken was enacted, and the remedy as created, was strictly followed in this case, and the tendered judgment by appellants preserved all prior rights and discontinued the district *only to the extent of* relieving the landowners within the district from the future burden of maintenance taxes, and which we think contravenes no principle of law that we have been able to find forbidding it.

We, therefore, conclude that the court erred in dismissing the proceeding, and likewise erred in overruling the motion of appellants to file the tendered "Paper X" as the judgment of the court. Perhaps, in order to avoid possible future confusion and to insure clarity, there should be a provision incorporated in it whereby the continuance of the district should be expressly preserved and the powers and authority of the drainage commissioners preserved, until such a time as may be necessary to collect funds for, and to take care of, all necessary steps for the liquidation of outstanding indebtedness, and that the present effect of the judgment should extend no farther than dispensing with assessments for future maintenance purposes.

Wherefore, the judgment is reversed, with directions that the orders appealed from be set aside, and for proceedings consistent with this opinion.