# Anderson v. Board of Drainage Commissioners, Ohio County.

March 2, 1943.

E. B. Anderson for appellant.

Otto Martin, E. S. Howard, and Kirk & Bartlett for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

In 1922 the Muffett Drainage District was established in Ohio County. See Muffett v. Black, 263 Ky. 196, 92 S. W. (2d) 74, for history. Assessments for construction purposes based on estimates, as against ninety-seven benefitted land owners, totaled $67,712.53, of which sum, within the thirty-day period, $20,173.53 was paid in. For the remainder of $47,000 bonds were issued. At a time, not stated, appellant acquired fourteen of these bonds of the face value of $7,000, thirteen unliquidated, with a balance due of $70.74 on a fourteenth bond. The last of the final series matured in 1932.

These bonds, as does the statute, provided that the holder should have a lien superior to other liens, save taxes, on the benefitted lands to provide for their payment. In August, 1938, plaintiff filed petition in equity, seeking to mandamus the board to make such pro rata assessment against the various tracts as would liquidate

his bond debt. It developed during pleading that of the original land owners in the district, all had paid full assessments save owners of four tracts, their acreage and assessments being as follows:

Mosely 50 acres, $1099; Basham 36, $532.12; Stewart 44, $1,105.28; Cambron Heirs——, $2,845. While plaintiff sought to have the board assess all the owners, it is conceded that the Act of 1918 (Ch. 114) repealed Section 34 of Ch. 132 of the 1912 Act, Ky. Stats., Section 2380-34, the effect of which was to limit the lien to those of the land owners who had not paid their assessments. The Esta Stewart tract also passes out of consideration, since it appears that it was sold during the pendency of this action, and the net proceeds of the sale were paid to appellant, who admits the land brought its fair value, though it occupied the same status in principle as the other three tracts.

The Ohio Oil Company was made defendant on the allegation that on the Stewart and Cambron tracts oil had been produced in commercial quantities and sold to the Company, it paying the usual royalty, and he was entitled to royalties since his lien extended to same, and the land was impressed with a trust for the benefit of the bondholders. The Oil Company, called upon to disclose, answered that it had bought no oil from the Stewart tract, but it had been and was buying from the Cambron tract, and had paid (presumably up to Nov. 11, 1938) $1459.04 to a drainage commissioner, and $3,327.07 to the bank, to be turned over to one Gray, who had acquired the tract from the Drainage Commission.

The board denied all averments of the petition, and plead affirmatively the five-year statute of limitations, because appellant's claim was based on a liability created by statute; it alleged that it had instituted suit to enforce the liens against the four tracts of land above mentioned, obtained judgments and sold the tracts in satisfaction of the liens, thus exhausting its legal remedies.

It also said that it could not in answer give the true status of its affairs, because of ill-kept and lost records, and it called for reference. It was agreed that plaintiff was the holder of the unpaid bonds. The original land owners were by direction of the court brought in as defendants, plead payment and release from liens.

Plaintiff, during proceedings, amended his petition showing that he had received the net proceeds from the sale of the Stewart tract, and $665 which the board had on hand from the sale of the Cambron tract to one Gray. Pleadings were in a manner completed up to this point, and the court referred the matter to a special commissioner with directions to make audit, take proof on all matters in issue and report.

The report (160 pages) was nothing more nor less than an audit of the books of the Commission, with references to court records of suits and judgments, without comment except as to incompleteness, due to ill-kept and lost records. The report did disclose that there was a probable cash balance of $11.04 in the board's treasury. No proof was offered by either party, and on submission, no exceptions having been filed, the court without opinion expressed, dismissed the petition.

As bearing on one of the issues involved (after admissions) we turn to the report, insofar as it relates to the sale of the Cambron, Mosely and Basham tracts, these being three of the owners whose lands were sold under court decree for the enforcement of the liens. The board in petition, filed in 1932, sought to recover $4,325.45 (original assessment plus interest) from the Cambron heirs. The land was appraised at $1,500, and Black, then drainage commissioner, bought it for $1,001, and sold it in July 1937 for $1,702. The report shows, and plaintiff concedes, that in distribution he received $665.15. The balance was paid out to persons having claims against the district for services rendered, outstanding warrants, taxes, attorneys' fees, court costs, etc.

The Basham property was sold under court decree in suit by the commission to one Royal for $700 on May 2, 1932. This sale was set aside and apparently the land was again sold, since in November 1935, one Roberts, under a court judgment, paid $666.18, "being in full of drainage tax assessed for the Muffett district." The Moseley tract was sold in April 1932, in a suit by commissioner to secure payment of $1,636.80, with interest, the purchaser being one Westerfield at the price of $925.00. Of this sum $814.05 went to the board, the balance being distributed in the manner above stated.

The report, showing payments of sums resulting from the sales of the various tracts, supra, brought ten-

der of an amended petition, in which appellant took the position that since the bonds secured to the holder a first and superior lien, a fact known to those who had received the proceeds, they should be made defendants and by the court required to pay into court for his benefit, the respective sums received by them. Over objection this amendment was not filed, nor did the court make the named parties defendants, nor order process against them as asked. The court's refusal to permit the filing is urged as ground of reversal, although there was no plea, nor is there argument or proof that any of the alleged sums were illegally paid.

On October 17, 1940, the court found from the records (though we fail to find basis) that oil was still being produced from the Cambron tract and purchased by the Ohio Oil Company, "for which it is now indebted to the owners of the Cambron land; further it has now in its hands money owing as royalties to the present owners," (presumably of royalties) naming eight of such. It was then ordered by the court that the Oil Company "forthwith pay to Bonnie Sosh for and on behalf of said named owners all the one-eighth royalty on all oil produced from said lands and received by the Oil Company from said Cambron land, beginning August 1, 1937, and thereafter, credited, however, by any sum said company has heretofore paid on oil royalties accruing after said date, to the Bank of Dundee. All future payments due on oil which may be received by the company from said land after the said above directed payment is made, shall be paid to said owners, as their respective interests may appear." To this appellant objected. It is difficult to comprehend the effect of this order, but we take it to mean that for any oil produced on the Cambron land, for which the company owed prior to the sale to Gray in July, 1937, should be impounded in the hands of a trustee for further orders as to distribution.

The objection to the order by appellant seems to be that the court should have directed the payment made to him, rather than to the trustee. Since the matter seems to have been left open by the court's order, the real complaint will arise when the court undertakes distribution, and it appears that under the ruling with regard to former payment, appellant would be entitled. The record is in no condition to determine the rights of parties.

As we survey the record, there remains after concessions by appellant only two questions for consideration: (1) Can the board be compelled to make reassessment of lands after it has exhausted its statutory remedy by suit to enforce the liens, where the property is in the hands of purchasers under decretal sales, not attacked because of any irregularity? (2) Did the court properly reject the tendered amended petition?

If the first question is answered in the negative, the second one is thereby answered. Appellant relies upon United States National Bank v. Young, 217 Ky. 312, 289 S. W. 273, in which construing paragraph 42 of the Act of 1918, the court held the sole question was as to whether or not a purchaser at decretal sale (not on behalf of district) of land embraced in a drainage district which had been assessed, with resulting lien, could have drainage assessments credited upon the purchase price.

The court held that the purchaser at decretal sale of such lands took with the continuing burden as to future assessments. The statute as found by the court, provided specifically that such should be the case. That statute also provides that the purchaser should be bound to the same extent as such owner at that time, would be bound if he had remained the owner. That case does not hold, nor was there occasion for the court to determine whether or not land in the possession of a bona fide purchaser could be sold a second time for the enforcement of a lien which had been exhausted by the district authorities.

The statute under consideration makes no such provision, nor does it provide for anything more than a sale by the sheriff as in cases of delinquent taxes, a method apparently not followed in this case. The rule is that when land is sold for the purpose of satisfying a mortgage or other lien debt, the lien is exhausted by the sale, and the lien holder has no further right under the lien created. Rogers v. Beam's Ex'r, 169 Ky. 239, 183 S. W. 930; Kentucky Stock Joint Land Bank v. Farmers Exchange Bank of Millersburg, 274 Ky. 525, 119 S. W. (2d) 873.

The tracts which appellant sought to have the board reassess for balance due on assessments, were sold under decretal sales (except the Stewart land) as far back as 1932. As far as this record shows, there were no person-

al judgments taken for deficiencies, and it may be doubted, since the statute does not so provide, that such judgment could have been taken; the statute makes no provision for enforcement of lien other than the summary sale provided for in Section 32 of the Act of 1912.

As we review the record none of the purchasers at decretal sale was asked to be, nor made parties following the filing of the amended petition setting up the claim against these lands, nor are they made parties to the appeal, with the possible exception of A. E. Westerfield, who was apparently a party below to the original petition. As to the rejection of the amended petition, what we have said with relation to the exhaustion of liens created by statute on the properties which had not borne assessments, is an answer to this contention. If there was no lien after the decretal sale, they received the funds in distribution free from any lien. Aside from this, however, there was a misjoinder of actions, since the amended petition to all intents and purposes sought personal judgment against those who had participated in the proceeds.

The original suit sought mandatory orders requiring the board to assess, and to pay over any money on hand which might be applied to payment of the bonds. The amended petition stated a new cause of action against different parties. While the court under the provisions of Section 134 of the Civil Code of Practice has discretion in the premises, it cannot be said here that discretion was abused. It would not be consistent with the rules of pleading to require the parties named in the tendered pleading to litigate in the proceedings instituted originally. This rule is well established in numerous cases; Palmer v. Smith, 204 Ky. 82, 263 S. W. 773; Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502; Wilkes v. Kitchen, 187 Ky. 211, 218 S. W. 718; Randolph's Adm'r v. Snyder, 139 Ky. 159, 129 S. W. 562, are exemplary.

It may also be noted that the parties from whom recovery of the proceeds of the various sales, while named in the amended petition, were not brought before the court on summons because the court rejected the pleading; they are named as appellees, but no process was asked in statement of appeal or issued. It is doubtful if the mere naming of these parties in the statement was sufficient under Civil Code of Practice, Section 739.

456

Land v. Kentucky Joint Stock Land Bank of Lexington, 279 Ky. 645, 131 S. W. 838; Owingsville & Mt. Sterling Road Co. v. Hamilton, Ky., 54 S. W. 175. However, there was no motion to dismiss either upon or before submission. Stratton v. Syck, 182 Ky. 78, 206 S. W. 160.

It is not necessary to discuss this phase of the case further, since we are of the opinion that the court did not abuse discretion in not allowing the last amended petition to be filed. On the whole case we are concluded that the court below properly dismissed appellant's petition and amended petitions. It is not necessary to discuss the plea or the effect of the plea of limitations.

Judgment affirmed.