# Thomas et al. v. Parsley et al.

Jan. 19, 1940.

As Modified and Extended on Denial of Rehearing May 31, 1940.

Porter Sims, Judge.

Charles E. Whittle, Charles R. Richardson, T. H. Demunbrun, C. E. Nichols, Brents Dickinson, Jr., Frank W. Jones and Stokes A. Baird for appellants.

V. R. Logan and Pleas Sanders for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Parties appellant, plaintiffs below, are H. B. Thomas and Hart County. Appellees, defendants below, are Edmonson County, and the then sheriff of that county.

Prior to the institution of a suit, Dr. Thomas had purchased from one Collins seven adjoining tracts of land, some of which are admittedly in Edmonson County. The controversy involves assessments of three of these tracts, under which, or parts thereof, is located "Floyd Collins Crystal Cave," making the land of more than ordinary value. The legality of the assessment turns on the question as to whether the particular tracts are located in Hart or Edmonson.

In 1928 Edmonson County authorities assessed to Dr. Thomas the Cave property at $10,000. He instituted

suit in which he sought to enjoin Parsley from enforcing his tax bill, on the ground that the land was located in Hart County, and was granted a restraining order. Similar action was taken with respect to later assessments with like results.

In 1931 Hart County, by its fiscal officers, came into the case and adopted as its pleadings such as had been theretofore filed. For two later years Dr. Thomas listed the land in Edmonson, and the supervisory board increased the assessment, and the owner, as is provided by statute, appealed to the quarterly court, which upheld the board; then followed appeals to the court in which the injunction suit was pending, and the cases were consolidated. Parties agree that the sole question presented is the location of the tracts in controversy.

Following the taking of a mass of evidence, the long drawn out litigation came to a head in August, 1938, on appellees' motion to dissolve the several temporary restraining orders, on the appeals, and motion for permanent injunction. The chancellor incorporated in the record an opinion in which he clearly stated not only the issues, but his conclusions. He said:

"If the assessing board of Edmonson County during any of these years raised the value of any of the tracts admitted to be in Edmonson County, the remedy of plaintiff is by appeal. Kentucky Statutes, Section 4128. * * * Royer Wheel Co. v. Taylor County, 104 Ky. 741 [47 S. W. 876]; Farm Bureau of Calloway County v. Pool, 205 Ky. 365 [265 S. W. 809]. But if the Edmonson County Board undertook to raise the value of land owned by plaintiff not located in that county, injunction is the appropriate remedy. Williams v. Wedding, 165 Ky. 361, 176 S. W. 1176. * * * In order to determine whether or not the assessment of the Cave property is valid, it will be necessary to determine the eastern-western boundary line between Hart and Edmonson Counties."

Counsel for appellants contend that a determination of the true boundary line between the two counties will result in throwing the Cave property in Hart County, and that the preponderance of proof shows the line to be as established by their surveyors. In brief it stated:

"The entrance to Crystal Cave is about one-eighth

of a mile south of Green River. The county line on the south side of Green River runs north and south, with slight allowances for magnetic varia- tions; if, therefore, the true corner between Edmonson and Hart Counties on the south bank of Green River can be ascertained, it will be easy to extend a south line from that point and thus determine in which county the Cave property lies."

This is apparently a fair statement, and counsel for appellees contend that by their survey, and otherwise, they have been able to establish that corner definitely, and to run the line to an equally well-established corner between Edmonson and Barren, thus fixing the true line. There is marked disagreement as to the starting corner, and the corner between Hart and Edmonson, near the point where the Cave property is situated. One set of surveyors fix this point near Dennison's ferry; others near Pike's Spring, they being quite a distance apart.

Edmonson County (originally Edmondson) was established by an Act of 1824. It was carved out of Warren, Hart and Grayson Counties, Ch. 204, Acts 1824. So much of the description as contained in the Act, (the starting point being in Warren) which may be of pertinence is:

"* * * thence a straight line to John White's, so as to leave him in Warren County; thence a straight line to the Barren line, at *Allen Hunter's;* thence with the Barren line to *Flatts' old place* on Green River."

By the Act of 1826 the county court of Edmonson County was authorized to employ the Simpson or Barren County surveyor, "or any of their deputies to run and mark the line of Edmonson County, or so many of said lines as the court may direct, and the surveyor shall be governed by the Act establishing the county in running and marking the lines."

In part conformity with the Act, Daniel Curd was employed and undertook to carry out the directions of the court. In his report he describes the line as did the Act establishing the county, as beginning at Haley's, then to John White's house:

"Thence S. 85 E. 200 poles to four black jacks, four heaverns and post oaks in the Barren line, standing

about 20 poles south of the Dripping Springs' road, and *opposite* Allen Hunter's old place; thence along the Barren and Hart line (which we did not run) North 3440 poles to 2 post oaks on the *south bluff* of Green River and lower corner of Hart County."

In 1851 one Scriverner of Barren, and Jones of Edmonson, were appointed to survey and remark the dividing lines between Barren, Edmonson and Hart counties, and "running to or near the residence of Hawkins' Camp." Session Acts, 1851-a, p. 374. Undertaking to carry out the task they reported in February, 1853, that "the corner between Barren and Hart cannot be found."

The chancellor remarked that the various reports were of little assistance, except that they "may be held to indicate the location of the corner between Barren and Hart *near* the old Allen Hunter place, and that to establish the line between the counties it will be necessary to locate, if possible, the Hunter place and run a straight line north to Flatt's place on Green River," and continues:

"Daniel Curd admits he never ran this line in 1828, and this seems to have been the first survey of Edmonson County after its establishment. The Jones-Scriverner survey did not run this line, but if so we cannot tell any degree of certainty where they started or stopped. During this litigation the surveyor of Edmonson County made a survey of the line for plaintiff. Miller made two surveys for the defendant, in the last of which he was joined by Jackson, Spillman and Rogers; the latter, county surveyor of Barren County, disagreed with his colleagues and refused to sign the report, because he was not satisfied the surveying party had correctly located the Hunter place. The beginning point in the Miller survey of 1930 is almost a mile from the beginning point in his survey of 1933. In accounting for the discrepancy Miller says he was trying to locate the Hunter place by distances in the Curd survey, rather than by finding the natural object. While making his 1933 survey he ascertained the location of the Hunter place from J. W. Neville, seventy-seven years old, and who had lived on the place all his life. He said his father was born in 1812 and died in 1883. J. R. Bridges, sixty-two years of age, corroborated Mr. Neville as to the lo-

cation of the Hunter place. Thompson in his survey located the beginning point like Miller in his survey of 1930, (taking Curd's distances) by starting at John White's dwelling, and running 79° 31 E. 2200 poles. * * *

"One of the elementary rules of both law and surveying, is that distances must give way to natural objects or monuments. The evidence of Neville and Bridges is so convincing that the old Hunter place was as located by Miller in his 1933 survey, that we are compelled to hold that he correctly located the beginning corner in the Barren-Edmonson line. In so holding we are letting the distance of 2200 poles (Curd survey) give way to what we think has been definitely established as the old Hunter place.

"In support of our finding we refer to the evidence of Spillman, who in 1894, accompanied his father as surveyor, and who under an order of the Edmonson county court, ran the line between Warren and Edmonson counties, in conjunction with the commissioners of Warren County. This party located the Hunter place as the corner between Barren and Edmonson counties, and planted a stone there which both Neville and Bridges testified about, as did L. G. Spillman, who was with his father on the survey. * * * We are further confiirmed in our conclusion by the fact that the records of Edmondson and Barren counties do not show any other land conveyed to Hunter in this vicinity.

"The next point is to determine the location of Flatt's old place on Green River. There are two Flatt places; the John Flatt patent of 100 acres, issued in 1799, and the Edward Flatt patent of 50 acres issued in 1816. Miller has platted these two patents on the map, and while they adjoin, the Edward Flatt place is not on the River; the John Flatt patent is. Therefore, it is evident that the John Flatt place is the one referred to as the 'old Flatt place,' which is shown as No. 1 on Miller's map, and has for its northern and western boundary, Green River. Dennison's Ferry is at the southwest corner of John Flatt's place, and to be as liberal as possible with plaintiff, the court establishes this south-

west corner of the Flatt place as the other corner between Edmonson and Hart counties on the south side of Green River, which under the testimony is known as Dennison's Ferry.

"When the county was created in 1824, the Hart and Edmonson corner was fixed at the 'old Flatt place on Green River.' This is the John Flatt place, and adjoins the Johns' tract on the east. Hence the Johns' patent cannot be in Hart County if the Hart line only comes to the Flatts' place on Green River. The John Flatt patent is 68 years the senior of the Johns' patent, and it should and does take precedence over the latter.

"When a study is made of the Miller map whereon he plats out these various patents, it is clear that Dennison's Ferry, and not Pike Springs, which latter is the northwest corner of the Johns' patent, is the true corner between Hart and Edmonson Counties, on Green River.

"We now refer to the point that plaintiff so forcefully argues, as to the Thompson survey passing through seventeen well-established points on the line between the two counties. The force of the argument is reduced when we recall that this line was never previously established. These so-called points set out in the Thompson survey are but points on what the minds of the people think is the true line, and are not points in the line at all. Each of the inhabitants living near the line has in his own mind where the line runs, but as the line was never actually run until this litigation arose, these witnesses could hardly have known where the line is. * * *

"We are of the opinion that the true corner between Barren and Edmonson counties is the planted stone near the ruins of the Hunter old house, and the eastern boundary of Edmonson County is a straight line running from this point to Dennison's Ferry on Green River, which is the line run by Miller in 1933."

We note that the chancellor in referring to the Spillman and Strode report (1894) remarked that they located the Hunter place and "planted a stone" there. They did plant a stone, but when we refer to the report we find that with particular reference to this point, fol-

lowing certain calls, it was said: "Thence S. 80¾ E. 7 miles and 130 poles to a stone planted at the Allen Hunter place." The original monument, if it were such, had been, according to proof, partially destroyed.

Counsel for appellants contend that the corners or pivotal points, as located by the Thompson survey were correct, since it followed Curd's survey, "S. 79 31 E. 2200 poles to a point opposite the Hunter place," then running in a northerly direction to "Pike Springs," not mentioned in any survey.

Appellants argue with some force that "since this action is not for the actual making of a survey, but an attempt to establish a former survey made many years ago, in which it is difficult to find the proper marks, it becomes necessary to contact the residents of the vicinity in order to find the true points of the survey, if such can be ascertained, and in so doing numerous witnesses, residents of the vicinity, testified." This is, perhaps, a statement of a correct rule, where there is doubt as to the marked line. And it is noted that a number of witnesses testified pro and con in support of the contentions of the respective parties, necessarily confined to matters which in most instances had been handed down from forefathers, thus lending effect to one or the other surveys, and, the various acts of the legislature and reports of former surveys. In this way they undertook to establish a disputed boundary by legend, reputation, or long acquiescence in what was believed to have been the boundary.

Counsel is correct in saying that the basis of the pending action was not for the purpose of establishing a boundary, but to determine, if possible, a boundary already established, and we may add, not for the purpose of re-establishing a boundary, and the surveys, reports and acts in connection with other admissible evidence, are considered only in determining the location of Cave property. It should not be overlooked that such surveys were not officially made; not made by virtue of legislative act, order of court, or by agreement of all parties having probable material interest.

Before passing to another phase of the case, we may comment that the Thompson map or plat is not filed with the record. We note that he was not altogether certain of the correctness of his survey. He admitted

on trial that the boundary marked out by him, starting at some distance from the Hunter place, and ending at Pike's Spring, was established in part "by what the people pointed out to me as being the line," and which the chancellor remarked had never been run. He also admitted that in reaching Pike's Spring, he did not pursue a straight course, but ran his line "zig-zag to some extent." As to some of the extrinsic evidence supporting the chancellor's conclusion that the Cave property was in Edmonson, it may be noted that for some years prior to the purchase by Dr. Thomas, the property in question had been assessed in Edmonson. To go into detail on the matters brought out in extrinsic evidence, would unnecessarily lengthen this opinion.

Passing for the moment from a discussion of the facts or the law of the case, we must refer to a rather unusual situation. After submission and consideration by this court, appellants moved for, and were granted, oral argument, in which it appears to us there was somewhat of an abandonment of the Thompson survey, and the evidence relating thereto. In this argument there was for the first time brought to attention an Act of the General Assembly of 1789, Vol. 1, p. 122, Littell's Laws, which carved territory from Warren and Green, and provided that, as described, it should constitute Barren County. In the description it is written:

"Beginning at the junction of Skaggs Beaver Creek and Big Barren River to run north to Green River; thence up the same to the mouth of Little Barren River, * * * thence with the Green line to the Tennessee State line, thence with the same a due west course, so far that a due north course will strike the beginning * * *."

Counsel for appellants insist that this represents the correct boundary. If it be, then a due north line running from the Tennessee line would carry the boundary between Barren and Edmonson, and the latter and Hart, a great distance west of the lines fixed by the Acts establishing Edmonson, or the lines fixed by either Thompson or Miller. A line thus established would result in throwing over into Warren a large portion of Barren, and into Barren and Hart a considerable part of Edmonson.

We have given consideration to the contention with

regard to this proposed line, just as we have the other acts and reports, in endeavoring to locate the Cave property. However, we are not impressed with the lately proposed boundary, particularly. in view of another act which was called to our attention. As said above, Edmonson County was established by the Act of 1824. There followed a special Act of 1825, directing Curd to survey and report. This was done apparently in 1828. For some undisclosed reason, in 1830 Motley was directed to survey and report. Acts 1829, Ch. 145. This ..ct was approved after report by Curd, as is manifested by an Act of 1830, (Acts 1830-31, p. 92) which was:

> " 'An Act to Repeal' an Act for the purpose of having the Edmonson County line run from White's to Hunter's; and also to run the line between Edmonson and Barren  *  *  *."

In the preamble it was recited that the 1930 act was wholly unnecessary in consequence of the line having been run between White's and Hunter's, under the 1825 act, and further that "the line between Edmonson and Barren was run agreeably to the provisions of the act establishing the county." The first section then repealed the 1830 act, and by Section 2 it was enacted:

> "That the line run by Daniel Curd, between the counties of Barren and Edmonson (Act of 1825) shall be and is declared to be the true boundary line of the County of Edmonson."

This to a great extent weakens the argument as to the "north line" with its basis of Skaggs Beaver Creek, since prior to the present constitution, and the inclusion of Sections 63 and 64, the legislature was all powerful in changing the boundaries of existing, and the creating of, new counties. Hence if it were necessary to decide the question of boundaries, we would be much influenced by the statement in the last act quoted, when coupled with the original establishing act.

It must be observable to the reader, from what we have stated, should we undertake to do what we are not —in the state of the record—called upon to do, that is *establish* corners or boundary lines, or any one of the three proposed, the result would be to involve, or in a way disturb some personal, civil and political rights.

It may be of no great importance, certainly no great public importance, as to whether this property be taxed

in the one county or the other. On the other hand it is of great importance to the public that settled conditions, if they be settled by acquiescence, and have existed for a long period of time, thereby fixing personal, civil and political rights be not disturbed, unless the disturbance be thoroughly justified, holding to the biblical admonition of Proverbs 22-28: "Remove not the ancient landmarks which thy fathers have set." Ullman case, infra.

That extrinsic and oral proof is admissible in cases where a boundary line is in dispute is not an open question.

"The boundary lines of counties are but seldom marked by natural objects, or artificial monuments, discernible by the naked eye. Often they are referred to the lines of the governmental surveys of the public lands, and sometimes to places designated by names, which change, or become obsolete. * * * The boundary is, of consequence, subject to parol evidence; and if its location is matter of dispute, generally it must be left to a jury to say where is its true location." Tidwell v. State, 70 Ala. 33.

In Ullman Bros. v. State, 16 Ala. App. 526, 79 So. 625, a property owner contended that his property was not in the county whose officers were undertaking to enforce collection of property tax, and the boundary line was in dispute. There were in evidence maps, legislative acts and other matter of which the court might, and did take judicial knowledge, yet the court held that extrinsic evidence was admissible in assisting the court to determine the location of the property in question. In Commissioners of Warren County v. Commissioners of Butler County, 6 Ohio Dec. 536, in a boundary dispute, the court remarked:

"The condition of things at the time the law was passed, the surroundings and circumstances calling for the law, the manner in which it was received and interpreted by those who were affected by the law, are weighty, evidentiary facts in determining the meaning and intention of the legislature as expressed by the law."

"Long, continuous, uninterrupted user, when lines and boundaries depend upon statutory references to physical objects which are not well defined,

is a practical interpretation of the statute courts must adopt, or involve the citizens relying upon it in embarrassments and uncertainties, not only as to rights of property, but as to personal rights.'' Tidwell case, supra.

To the same effect in respect of the general rule stated, reference may be had to Hunt County v. Rains County, 116 Tex. 277, 288 S. W. 805; Randolph v. Moberly H. & F. Club, 321 Mo. 995, 15 S. W. (2d) 834; Courter v. Burrough of Lincoln Park, 101 N. J. Eq. 572, 138 A. 99. The rule has been recognized and applied by the Supreme Court U. S. in the case of Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329.

We have cited the above cases, and stated the rule merely for the purpose of showing that extrinsic evidence may be introduced for the purpose of establishing a boundary line between counties, where the same may be in dispute; however, we are unwilling on the proof in this case to disturb personal or civil rights by establishing a boundary, the effect of which would be mayhap, to destroy the rights of parties who were not before the lower court, when the question was only the location of one person's property.

We have had little or no difficulty in reaching the conclusion, upon consideration of all the evidence, including acts, surveys, reports and maps, as well as oral evidence, that appellant's cave property is located in Edmonson County, which was the sole question before the trial court, and the only one here. We are unwilling and decline to undertake the establishment, for all purposes. the boundary line between the counties involved, or which might become involved. The way the case has been presented and proof adduced, would hardly justify us in determining a question of so far reaching possibilities.

It follows, from what we have observed, that the judgment of the chancellor in denying permanent injunction, and holding that appellant's property, over which the dispute arose, is in Edmonson County, should be and is affirmed. but that the judgment should be, and it is modified to the extent that it undertakes to establish the boundary line between the involved counties.

Judgment affirmed.